No. 24,074.

C. T. Barton et al., *Appellees*, v. The Butler County Oil Company, *Appellee*, et al. (The Arkansas River Gas Company, *Appellant*.)

SYLLABUS BY THE COURT.

1. Compromise and Settlement of Litigation—*Action to Set Aside—Bad Faith, Negligence by One of the Parties Insufficient.* In an action to set aside a compromise and settlement of pending litigation, bad faith. negligence and indifference on the side of one of the parties is not sufficient ground to vitiate the contract when the other party to it is without fault and is insisting that it be maintained as executed.

2. Same—*Action to Set Aside Settlement—Inadequacy of Consideration Insufficient.* Inadequacy of consideration is not ordinarily a sufficient ground to set aside a compromise and settlement of a claim to property when that claim is subject to litigation and where the chances of success in such litigation are hazardous and uncertain.

3. Same—The record examined, and no evidence disclosed therein to support a finding that the sum of $35,000 paid in compromise and settlement of plaintiffs' claim to recover an oil and gas lease was an inadequate consideration.

4. Same—*Questions of Law and Facts Considered.* Certain questions of fact and of law which inhered in the subject matter of the lawsuit, which was

compromised, settled and dismissed, noted, and held not to be of controlling significance herein and not decided.

5. SAME—*Management of Corporation—Vested in Its Board of Directors.* The management of a corporation is vested in its board of directors, and such board has power to institute, prosecute, compromise, settle and dismiss a lawsuit in which the corporation's claim to property is involved.

6. SAME—*Power of Board of Directors Over Corporate Assets.* The rule that a board of directors of a going corporation has no power to sell or dispose of its corporate assets in such manner as will disable the corporation from further exercising its corporate powers, without the assent of the stockholders to such sale or disposition, has no application to a compromise and settlement of a lawsuit where a mere claim to corporate property is involved and where that claim is of doubtful and uncertain merit.

7. SAME—*Corporation Not Disabled to Function as a Corporation by the Compromise and Settlement.* The compromise and settlement of the claim of plaintiffs' corporation to the oil lease involved herein and its assignment for $35,000 examined, and *held,* that neither in fact nor in law did such compromise, settlement and assignment disable the corporation from the further exercise of its corporate functions.

8. SAME — *Settlement Made by Board of Directors — Ratification by Stockholders Unnecessary.* The compromise and settlement of pending litigation and the assignment of a claim to an oil lease involved therein, being matters within the managerial powers of the board of directors of a corporation, the other party thereto being free from fault cannot be deprived of the benefits of its bargain although the stockholders refuse to ratify the compromise and settlement effected by their board of directors.

Appeal from Sedgwick district court, division No. 3; JESSE D. WALL, judge. Opinion filed December 9, 1922. Reversed.

*Thomas C. Wilson, Fred B. Stanley, Kos Harris, V. Harris, Henry Lampl, T. V. McCluggAge, Vincent F. Hiebsch,* all of Wichita, *Joseph S. Clark,* and *Henry A. McCarthy,* both of Philadelphia, Pa., for the appellant.

*John W. Adams, Chester I. Long, J. D. Houston, A. M. Cowan, Claude Depew, Forest Siefkin, William J. Wertz, James G. Norton,* all of Wichita, and *John H. Connaughton,* of Hutchinson, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action by stockholders of the Butler County Oil Company to set aside a compromise settlement of a controversy in litigation between their company and the Arkansas River Gas Company over an oil lease and to set aside the assignment of the lease executed pursuant to that settlement.

The outstanding facts which disclose the interest of the parties and which led up to this lawsuit are as follows: In January, 1916, William Parris and wife, the owners of the west half of section 20,

township 23 south, range 4 east, in Butler county, leased that property to one S. M. Thorp. In February, 1916, the Butler County Oil Company was incorporated, with charter powers—

"To engage in the business of drilling wells for the production of petroleum oil and natural gas; to make, buy and sell leases on land for oil and gas privileges and to develop same for the production of oil and gas; to buy and sell petroleum oil and natural gas, and generally, to do any and all things necessary to carrying on the foregoing business."

Thorp assigned his lease from Parris to the Butler County Oil Company in May, 1916. In March, 1918, the Butler County Oil Company sold and assigned the north 80 acres of the lease to one Dedrick. The remaining 240 acres of this lease is the subject matter of this litigation. Prior to May, 1918, the Butler County Oil Company had acquired a few leases, and in 1916 had done some drilling for oil but without productive results. It had also acquired some oil drilling equipment machinery, but had permitted it to go out of its possession, and part of that equipment was lost and the rest was mortgaged. The company's finances became embarrassed; rents and corporation taxes were falling due, and no funds were available to pay them. The board of directors authorized one of their number, M. E. Fleming, to procure a loan of $500, to be secured by an assignment of the Parris lease and three or four other leases owned by the company. Fleming applied to the Rose Hill State Bank for the loan. The bank declined; but certain officers and directors and others interested in the bank decided to make it on their own account, taking the note and the leases assigned to secure it in the name of the bank as trustee. This note for $500 was dated May 1, 1918, and was due July 1, 1918. The assignment of the [Parris] lease in question was in the ordinary form of sale and assignment, but the bank in a separate and unrecorded instrument executed to the company an agreement, reciting—

"In consideration of the payment of one certain note dated May 1st, 1918, due in sixty days for $500, the said party of the first part agrees to reassign to said party of the second part all the leases which were assigned by party of the second part to party of the first part, to secure the payment of the above described note. Should the said Butler County Oil Company fail to pay said note on July 1st, 1918, then in that event all said leases are to become the absolute property of said Rose Hill State Bank."

It appears that the assignment of the Parris lease at first contained a misdescription of the property. It read—"The west half

Barton v. Oil Co.

of section 20, . . . except the *west* half of the northwest quarter." It was thus recorded, but later, in some way not shown, it was corrected to read, "The west half of section 20, . . . except the *north* half of the northwest quarter," and after such correction it was again recorded. The testimony of the secretary of the company on the point reads: "I made a mistake in the description and someone afterwards put an 'N' over my 'W'."

On June 20, 1918, the company was placed in the hands of a receiver, and so continued for about seven months. When the $500 note to the Rose Hill State Bank fell due, the receiver called on the bank to prove its claim, but it refused. The note not being paid when due, the bank advertised and sold the leases assigned to it, following substantially the procedure outlined for the sale of mortgaged chattels upon condition broken. The bank advertised the leases for sale by posting notices within the township, and on July 16; 1918, the leases were sold to the highest bidder, the Parris lease being sold and assigned for $10 to one Josiah Jones, who was one of the men who had advanced the $500. There was an agreement between the men who had advanced the $500 that one of the leases, the "White" lease, which is not involved here, should not be permitted to pass into the hands of an outsider for less than $1,500, as it was then considered to have possibilities of profit, and considerable money had been sunk in its attempted development. Altogether the leases which were thus sold at auction realized the sum of $170, which was credited on the note of the Butler County Oil Company.

Shortly after these matters transpired, successful oil development in the neighborhood of this Parris lease came rapidly and the speculative value of oil leases greatly increased. Two persons, Smith & Richardson, bought the Parris lease from Jones for $500 on August 2, 1918, and Jones assigned it to them. On August 8, 1918, the receiver of the Butler County Oil Company commenced a suit to recover the Parris lease. This suit was not brought to trial and it was dismissed without prejudice in January, 1919, about the time the receiver was discharged. During this receivership, the Rose Hill bank was paid the *balance* due on the $500 after the proceeds of the sale of the leases had been credited thereon.

On July 5, 1919, the defendant Arkansas River Gas Company was organized, and on July 15, 1919, it purchased the interest of Smith & Richardson in the Parris lease for $50,000. About that

time the lessors, Parris and wife, instituted an action against the Butler County Oil Company and Smith & Richardson to cancel the lease for nonpayment of rent. The Arkansas River Gas Company was impleaded on its own motion and filed an answer. In time that case went to judgment and was brought to this court for review. (*Parris v. Oil Co.*, 108 Kan. 330, 195 Pac. 879.) When the Arkansas River Gas Company acquired the property it speedily set about its development and a vast amount of oil has been and still is being produced therefrom.

Following the discharge of the receiver of the Butler County Oil Company, in January, 1919, that company set about the project of recovering the lease, and accordingly it employed W. D. Jochems, a Wichita attorney, on a contingent fee, for that purpose. Such an action was filed by Jochems in behalf of the Butler County Oil Company against Smith & Richardson, in January, 1919, and after the Arkansas River Gas Company acquired their interest it was made a defendant; and on November 10, 1919, that lawsuit was compromised, settled and dismissed for a consideration of $35,000 to be paid by the Arkansas River Gas Company to the Butler County Oil Company. There was a further consideration for the compromise and settlement in that the Butler County Oil Company agreed to make common cause with the Arkansas River Gas Company to defeat the then pending action of Parris and wife to forfeit the lease. Part of the compromise agreement recites:

"This agreement, made the date last hereinafter written, by and between The Arkansas River Gas Company, by George A. Shryock, being thereunto duly authorized, party of the first part, hereinafter called the Gas Company, and The Butler County Oil Company, by its president and secretary, duly authorized by resolution of the Board of Directors, party of the second part, hereinafter called the Oil Company.

"Witnesseth, Whereas, there is an action pending in the District Court of Butler County, Kansas, entitled William Parris and Flora M. Parris v. The Butler County Oil Company, The Arkansas River Gas Company, S. H. Smith, W. C. Richardson, et al., and there is, also; an action pending in said court of The Butler County Oil Company, v. S. H. Smith, W. C. Richardson, The Arkansas River Gas Company, William Parris, Flora M. Parris, et al., and the said actions have been consolidated by order of the District Court of Butler County, Kansas, and

"Whereas, a full settlement has been made between the Gas Company and the Oil Company, by the terms of which settlement the said Gas Company is to pay unto the said Oil Company on performance of the conditions hereinafter set out, and the entering of the decree as hereinafter set out, the sum of Thirty-five Thousand ($35,000) Dollars, in cash, in consideration

Barton v. Oil Co.

that the said Oil Company, by and thru its officers, directors and attorneys, shall, in all honorable ways, assist the said Gas Company at and upon the trial of the said consolidated actions and dismiss its petition and cross-petition in said consolidated actions, which said dismissal to be with prejudice, as to the Arkansas River Gas Company and its assignors and said Oil Company also ratified the sale of the oil and gas leases made by the Rose Hill State Bank to Josiah Jones, as a part of the consideration for said sum of Thirty-five Thousand ($35,000) Dollars, and the said Oil Company is also to execute and place with this contract in escrow an assignment of all its interests in the said lease under which the said Arkansas River Gas Company claims its title to said lands."

Pursuant to the execution of this agreement, the board of directors of the Butler County Oil Company adopted a resolution, viz.:

"Be it further resolved, that the sales of July 16th, A. D. 1918, to Josiah Jones, by The Rose Hill State bank, of certain oil and gas leases, including the lands in controversy in the actions in the District Court of Butler County, Kansas, said leases held by said Bank as collateral to a note of The Butler County Oil Company for the sum of Five Hundred ($500.00) Dollars, be, and the same are hereby ratified and confirmed.

"And be it further resolved that W. D. Jochems, attorney for the Butler County Oil Company, be, and he is hereby duly authorized and empowered to dismiss, with predjudice, the said action of The Butler County Oil Company and its cross-claim or counter-claim in the action of Parris v. The Butler County Oil Company, et al., all as per agreement above set out and also,

"Be it further resolved that the officers, directors and attorneys of The Butler County Oil Company render all proper and honorable assistance to The Arkansas River Gas Company, in the actions to be tried in the District Court of Butler County, Kansas, and the president and secretary of The Butler County Oil Company are directed to furnish to The Arkansas River Gas Company a certified copy of these proceedings under the seal of the said company."

This agreement was carried out; the Parris case to forfeit the lease was won in the district court, and the $35,000 was paid over by the Arkansas River Gas Company. Later, at a meeting of stockholders of the Butler County Oil Company, a proposition to ratify the compromise and settlement was defeated; and on March 3, 1920, the present action was begun by the plaintiffs as stockholders, on behalf of the Butler County Oil Company, to set aside the compromise and settlement of November 10, 1919, and to require the defendant Arkansas River Gas Company to reassign the Parris lease to the Butler County Oil Company.

Plaintiffs' amended petition, among other matters, alleged that at

the time Jochems was employed it was understood that the lawsuit "was to be fought to a finish," and—

"That said pretended compromise was directly in conflict with directions of the stockholders to prosecute said suit to a final conclusion. . . . That the dismissal of the suit, the assignment of the lease, and the purported compromise and settlement, were each without authority of the stockholders of the Butler County Oil Company, and in fraud of their rights, and should be set aside and vacated.

"Plaintiffs believe and allege that the officers of the Butler County Oil Company while attempting to make said compromise and settlement were personally interested therein, in a manner antagonistic to the rights and interests of the Butler County Oil Company, and allege that the said C. C. McCollister and H. A. Newell were owners of stock and interested in the obligations of the Arkansas River Gas Company and that each of them received a consideration for the purported settlement of said lawsuit, separate and apart from that pretended to be received by the Butler County Oil Company, . . . and that they were actually in making said purported compromise in collusion to the officers and directors of the Arkansas River Gas Company, and in fraud of the rights and interests of the Butler County Oil Company and its stockholders, . . . That no adequate consideration was received by the Butler County Oil Company for the attempted transfer of its interest in said lease and to said cause of action, . . . that the directors of the Butler County Oil Company, to wit: C. C. McCollister, H. A. Newell, M. E. Fleming, Clyde Murphy, and John E. Callahan are acting in collusion with the said C. C. McCollister and H. A. Newell, and the Arkansas River Gas Company and its officers G. L. Esterbrook, George Shryock, William Lilley, and J. E. Shryock, and have refused to take any steps to set aside said purported assignment, compromise and settlement. That the, Butler County Oil Company under the directions and management of said officers and directors is perverting, misusing and abusing its corporate privileges and franchise, and is attempting to dispose of all of its property and to cease its corporate functions without the consent of the stockholders, and contrary to their wishes, and this suit is brought for the benefit of the plaintiffs and all other stockholders similarly situated."

Plaintiff's petition also delineated the various transactions which we have narrated above, and recited various alleged infirmities therein.

The answer of the Arkansas River Gas Company traversed the allegations of plaintiffs' petition, and on the issues thus raised the cause was tried without a jury. The evidence was voluminous, but many incidental matters which were presented and considered at length will not need to be treated herein. The trial court made many findings of fact and conclusions of law, and gave judgment for plain-

tiffs and directed that the Parris lease be reassigned to the Butler County Oil Company.

The principal defendant appeals, urging various errors; but the vital one centers about the trial court's conclusion and judgment that the compromise and settlement of November 10, 1919, was illegal and not binding on the Butler County Oil Company.

We must give space for the most significant of the findings of fact from which this conclusion was deduced:

"XXXV. On November 10, 1919, the Butler County Oil Company was not insolvent. . . .

"XXXVI. The directors of the Butler County Oil Company in attempting to sell all of the rights of said Company in and to the Parris lease and all of its rights in pending litigation in relation thereto, and in attempting to ratify the sale of July 16, 1918, at Rose Hill State Bank of all its leases, were attempting to sell by far the greater portion of it, and practically all the valuable portion of the property of The Butler County Oil Company for the purpose of dissolving the corporation and winding up its affairs and distributing the assets among the stockholders. . . .

"XXXVII. The directors McCollister and Fleming acted in bad faith and Director Newell was negligent and indifferent to his responsibility and duties as a director with relation to the agreement entered into with the Arkansas River Gas Company on November 10, 1919. Directors Murphy and Callahan acted in good faith with relation to said agreement.

"XXXVIII. The attempted sale by the directors of the Butler County Oil Company on November 10, 1919, to The Arkansas River Gas Company of the Parris lease and rights in pending litigation, was for a grossly inadequate consideration.

"XXXIX. The attempted sale by the directors of the Butler County Oil Company of that company's interest in the Parris lease and of all rights of action of that company in litigation then pending in Butler County, Kansas, in regard to that lease, made on November 10, 1919, was not a transaction had in the usual and ordinary course of business of the corporation.

"XL. The Arkansas River Gas Company on November 10, 1919, knew that the attempted sale by the directors of the rights of The Butler County Oil Company in and to the Parris Lease and in pending litigation, was not made in the ordinary course of business but was made for the purpose of dissolving the corporation and distributing the assets among the stockholders, and that said agreement provided for the alienation by the directors of the Butler County Oil Company of substantially all of the property of the company. . . .

"XLII. On November 11, 1919, being the day of trial, W. E. Jochems dismissed without prejudice the case of the Butler County Oil Company. . . .

"XLIII. On November 10, 1919, the value of the Parris lease was in excess of $240,000, . . .

"XLV. . . . The purported sale of all the leases of said company at the Rose Hill State Bank on July 16, 1918, has not been ratified or confirmed by

a meeting of the stockholders of the said Butler County Oil Company regularly called and by a vote of a majority of the stock outstanding, although at least one attempt to procure such ratification has been made. . . .

"XLVIII. No conspiracy existed between the Arkansas River Gas Company or any of its officers, agents, servants or employees and the directors of the Butler County Oil Company, to wit: M. E. Fleming, Clyde Murphy, J. E. Callahan, C. C. McCollister. and H. A. Newell and W. D. Jochems, attorney for the Butler County Oil Company, prior to November 10, 1919, nor on that date.

"XLIX. The evidence failed to establish any fraud or bad faith on the part of the Arkansas River Gas Company or any of its officers, agents, servants or employees.

"L. . . . There is nothing in the evidence which tends to show that the said W. D. Jochems at any time prior to, and on November 10, 1919, acted in any other manner except in the utmost good faith and in his discretion and judgment as to the best interests of his client."

The clean bill of health which the trial court gave the Arkansas River Gas Company eliminates all question of collusion, conspiracy, fraud or bad faith between it and the directors of the Butler County Oil Company from this lawsuit.

Two of the five directors of the Butler County Oil Company, and the attorney, Jochems, who acted for the Butler County Oil Company, are similarly exonerated. Three of the directors of the oil company, constituting a majority, are found to have been actuated by bad faith, negligence and indifference to the interests of their company. But does bad faith or other dereliction on the side of one of the parties to a contract give a sufficient ground to set it aside when the other party to the contract is without fault and guiltless of any wrong and is not complaining? Certainly not. The defendant had a lawsuit on its hands. It previously had been harassed with similar lawsuits. It had another lawsuit, the Parris case to cancel the lease where, if defeated, it would not avail it to win the lawsuit it sought to compromise. It therefore decided, as it lawfully and prudently had a right to do, to compromise the first and make common cause with its rival to win the other. Since the trial court found it was guiltless of fraud or bad faith in effecting the compromise and settlement of November 10, it cannot be deprived of the benefits of that contract of settlement merely because of some dereliction or misconduct of the other party thereto.

In *Gregory v. Wendell*, 40 Mich. 432, which was an action by grain brokers to recover for breach of contract to purchase grain, and one of the questions involved was—"whether the transactions out of

which the suit sprung were not mere gambling transactions, and therefore incapable of affording a ground of action." Justice Thomas M. Cooley said:

"Neither can any question exist that if one party to a transaction contemplates an actual purchase, or the other an actual sale, the transaction may be perfectly valid irrespective of any illegal views or purposes that may have been indulged by the other . . . The illegal intent that shall defeat the contract must be the common intent of both parties." (pp. 437, 439.)

In *Hanover Nat. Bank v. First Nat. Bank,* 109 Fed. 421, a question arose whether the plaintiff bank's knowledge of an unlawful purpose on the part of the president of the defendant bank in negotiating a discount transaction with plaintiff would affect its validity. Judge Sanborn of the court of appeals said:

"Another contention of counsel for the bank is that the contract between the two banks is incapable of enforcement, because Sheldon informed the New York bank that the reason why he wanted to make the agreement without putting the indorsement of the defendant on the paper was that he did not wish to report to the comptroller and publish the fact that his bank had procured these rediscounts. It is insisted that this statement of Sheldon when the contract was made injected into it a fatal vice, because it brought home to the New York bank knowledge of the fact that the contract might assist Sheldon in evading or violating the provisions of section 5211 of the Revised Statutes, which requires the presentation to the comptroller of the currency, and the publication of the reports of the resources and liabilities of a national bank. But there are several reasons why this position is not tenable. In the first place, the argument is founded on the principle that an action cannot be maintained on a contract that is illegal or against public policy, in which both parties are equally culpable. *Bartle v. Coleman,* 4 Pet. 184, 7 L. 825; *Trist v. Child,* 21 Wall. 441, 22 L. Ed. 623; *Marshall v. Railroad Co.,* 16 How. 314, 14 L. Ed. 953; *Hinnen v. Newman,* 35 Kan. 709, 12 Pac. 144. But this rule has no application to an agreement which has no consideration and which requires the performance of no act that is either illegal or against public policy; and that is the character of the contract here in issue. Neither the intention of Sheldon not to report the rediscounts nor his statement of that intention constitutes any part of the consideration of this agreement. The only consideration for the advances of the New York bank was the discounts and the interest it would obtain, while on the other hand, the only consideration for the promise of the Kansas bank was the use of the money it would secure, and the excess of discounts and interest it would earn above those that it would pay. The intent or purpose of Sheldon could not have been a part of the consideration of the agreement, because neither he nor the Kansas bank promised to accomplish that purpose, and there is no evidence that it ever was accomplished. It was at most a mere collateral incidental, unaccomplished purpose, and could constitute no bar to the enforcement of the agreement. The mere fact that a contract the consideration

and performance of which are lawful incidentally assists one in evading a law is no bar to its enforcement. Greenhood Public Policy, p. 538, rule 464; *House v. Soder,* 36 Tex. 629; *Gerhard v. Neese,* Id. 635; *Jefferson v. Burhans,* 29 C. C. A. 481, 85 Fed. 949, 58 U. S. App. 586, 593, 595." (p. 425.)

Touching the inadequacy of the consideration, $35,000, for the compromise and settlement, the trial court found that the value of the lease at the time of the settlement was in excess of $240,000, but it should be observed that there was no evidence as to the value of the Butler County Oil Company's interest in that lease. In the nature of things, the oil company's claim was of so precarious and uncertain a character that there could not be any practical or helpful evidence as to its value. Let us glance at the principal barriers which the oil company would have had to overcome before it could have recovered the Parris lease if the compromise of November 10, 1919, had not been effected. It would have had to secure an authoritative adjudication that the sale of the lease by the Rose Hill State Bank was illegal on some such ground as plaintiffs here contend for—that a foreclosure as in the case of real estate with eighteen months' redemption was essential to its validity. Now, notwithstanding the learning and industry of counsel to establish that proposition, this court is not greatly impressed therewith. Defendant as stoutly argues that the assignment and defeasance constituted a chattel mortgage. Without positively deciding that point, there is good ground for the view that the assignments of the leases to the Rose Hill bank as collateral and the separate contract defining the rights of the oil company and the bank thereto were neither mortgages on real estate nor yet precisely chattel mortgages. (*Hall v. Terra Cotta Co.,* 97 Kan. 103, 109, 154 Pac. 210), but were in the nature of a pledge (*Dewey v. Bowman,* 8 Cal. 145; 21 R. C. L. 634); and could be dealt with as pledged collateral is usually disposed of when the principal obligation is not paid on demand at or after maturity—by notice and a fair sale. (*Savings Bank v. Capital Savings Bank,* 77 Vt. 123, 107 A. S. R., 754, 759; 2 Kent, 14th ed. *582; 31 Cyc. 871; 21 R. C. L. 687.)

In *Atkinson v. Bush,* 91 Kan. 860, 863, 139 Pac. 393, it was said: "We have no statute relating to pledges and the common law therefore applies thereto."

Passing that obstacle, the oil company would have had to show that Smith & Richardson had sufficient notice of the rights of the oil company to defeat their claim as purchasers for value, although now that this point has been put to the hazard of litigation it

Barton v. Oil Co.

transpires that the trial court discovered some evidence to support a finding to that effect. There was no evidence that Smith & Richardson had notice of the defeasance, and if the information given them by Josiah Jones that the Butler County Oil Company claimed an interest in the property had been followed up, it scarcely appears how they could have ascertained the facts. The fact of the assignment of the lease by the oil company would have been ascertained; its sale by the bank would have been learned; but they did learn all this, and when they called at the bank, it advised them that the lease had been sold to Jones. They could hardly have been said to have been lacking in diligence because they did not inquire about an unrecorded defeasance, nor because they did not inquire concerning any confidential understanding between Jones and the other men who put up the $500 which was loaned to the oil company. Space forbids that we enlarge upon these matters. We are not to be understood as positively determining these points. We merely touch upon some of them to show the difficulties and debatable questions of law which the oil company would have had to surmount before it could have repossessed itself of the Parris lease, if the lawsuit pending on November 10, 1919, had been fought to a finish. Some other nice questions involved were the effect of the record in the receivership case where the liabilities of the oil company were scheduled to include merely the *balance* due the Rose Hill bank after crediting the proceeds of the sales of the leases assigned to it. That incident savored somewhat of acquiescence. Moreover, there was at the time of the compromise and settlement an action pending to cancel the Parris lease for nonpayment of rent. If that action were lost, a successful prosecution of the lawsuit against the Arkansas River Gas Company would have been a fruitless victory.

In view of the foregoing, the trial court's finding as to the inadequacy of the consideration for the compromise and settlement is not only without support by evidence but is entirely overthrown by the circumstances confronting the oil company on the eve of the trial, November 10, 1919. It has been held that inadequacy of consideration is not sufficient ground to set aside a compromise and settlement. (12 C. J. 354; and see *Robinson v. Railway Co.*, 96 Kan. 137, 141, 150 Pac. 636; Id. 655, 153 Pac. 494.)

It seems clear, however, that the principal ground upon which the trial court rested its judgment was that the board of directors did not have the power to compromise and settle the lawsuit pending on

November 10 for the reason that the carrying out of that agreement disabled the oil company from further exercising and discharging its corporate functions. 'Much good law is quoted by counsel for appellees to the general effect that a board of directors of a corporation has no right to sell out all the assets and business of their corporation, nor to make any contract which has that effect. Such is the general rule. It is the duty of a board of directors to conduct the corporate business, not to terminate it. Only the stockholders of a going corporation (Gen. Stat. 1915, §§ 2181, 2111) may authorize a transaction designed to cause a cessation of its corporate functions, or which obviously will have that effect. (Note in 103 A. S. R. 548; 3 Cook on Corporations, 7th ed., § 670; Note in 35 L. R. A., n. s., 396; 7 R. C. L., 311.)

But all that good law does not reach this case. The real question is: Did the board of directors of the Butler County Oil Company have authority to compromise the lawsuit pending on November 10? The board had power to borrow the money from the Rose Hill Bank and to pledge its assets including the Parris lease to secure that loan. It had the power to assign the Parris lease, either conditionally or absolutely. It had the power to authorize the institution of a lawsuit to recover that lease, and it seems impossible to hold that it did not have power to compromise and settle that lawsuit. The institution, prosecution, compromise and settlement of lawsuits are among the legitimate functions of a board of directors of a corporation, and their exercise does arise in the usual course of the corporate business. Nor can it be said that a meeting of stockholders and a majority vote or two-thirds vote thereof are requisite to sanction the compromise of a lawsuit.

Furthermore, the rule that a board of directors cannot make a sale of corporate property which will disable the corporation from continuing its functions is not applicable to the sale of this lease. The sale of this lease did not disable the corporation from exercising its corporate functions. One of its corporate powers was to buy and sell leases on land for oil and gas privileges, so the sale of this lease was clearly within its charter powers. (*Hendren v. Neeper,* 279 Mo. 125, 5 A. L. R. 927.) The trial court found that the corporation was not insolvent. But for nearly three years it had been out of the active exercise of its corporate functions. During that time it was not engaged in drilling oil or gas wells; it was not engaged in buying and selling gas and oil leases; it was not engaged

in buying and selling oil and gas. It was in the hands of a receiver a part of the time. A generous director saved its corporate life by a timely advancement of the annual corporation tax. So the compromise and settlement of November 10 did not terminate its corporate functions nor frustrate their further exercise. There had been a practical nonuser as to all of them except the power to institute and eventually compromise the lawsuit pending on November 10, 1919. And it is perfectly clear that before the compromise the corporation was not a going concern; it was practically dormant; and it is likewise clear that after that compromise was effected and the $35,000 received pursuant thereto, and because of it, the oil company was rehabilitated so as to be in a vastly better situation to exercise its functions, buying and selling oil and gas leases, buying and selling oil and gas, and drilling for oil and gas, than before it effected that compromise and made that settlement.

The other matters pressed on our attention, particularly those urged in support of the judgment, as well as the extensive abstract and counter abstract, have had our studious and protracted consideration, but it is needless to extend this discussion. The court attaches little significance to the change in the description of the (Dedrick) eighty acres *reserved* from the property assigned, and little significance to the defects in some of the signatures to some of the assignments. This is an equity case, and instead of magnifying these defects, equity would require them to be reformed and signed according to the intention of the parties if need and justice required. We note the contradictory journal entries as to the dismissal of the action on November 11, 1919—one reciting that it was with prejudice, the other without prejudice, and the trial court's finding thereon; but it is undeniable that the compromise agreement stipulated for a dismissal with prejudice, and Jochem's instructions were to make that disposition of it. As to the refusal of a subsequent meeting of stockholders to ratify the compromise of November 10, 1919, we have shown that the compromise and settlement were within the power of the board of directors and consequently were in no need of stockholders' ratification (*Post v. Buck's Stove & Range Co.,* 200 Fed. 918, 43 L. R. A., n. s., 498; 3 Cook on Corporations, 7th ed., 2423, although it can readily be understood that after extended harassment with litigation and after payment of so great a sum to settle it, the principal defendant, on threat of

further litigation, would urge the stockholders to ratify so that the defendant might secure the peace it had fairly bought and paid for.

The judgment of the district court is reversed, and the cause remanded with instructions to enter judgment for the defendant, The Arkansas River Gas Company.