No. 34,162

MATT GUILFOYLE, Trustee for the Beach Oil Company, *Appellee*, v. MAUD BROWN, as Administratrix with the Will Annexed of the Estate of Cleyson L. Brown, Deceased, *Appellant*.

(88 P. 2d 1082)

Opinion filed April 8, 1939.

*Arthur Hurd* and *John M. Rugh,* both of Abilene, for the appellant.

*B. F.. Napheys, Jr., Matt Guilfoyle* and *Thornton D. Scott,* all of Abilene, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover the purchase price of stock in a corporation. Judgment was for plaintiff. Defendant appeals.

The action was brought originally by the Beach Oil Company. Subsequent to the time when the action was commenced reorganization proceedings of that corporation were begun under 77B of the bankruptcy act. A trustee was appointed in that proceeding and this litigation has been carried on by him.

The petition alleged first the organization of plaintiff; that defendant was the administratrix of the estate of C. L. Brown; that C. L. Brown was one of the incorporators and during his lifetime, from March 31, 1926, until November 12, 1935, was the president and a director of plaintiff. The petition then contained the following paragraph:

"That during said period of time he entirely dominated and controlled the business and affairs of said corporation, hiring and discharging employees and fixing. their compensation, and. that during all of said period of time all the officers and directors of said corporation were selected and chosen by the said C. L. Brown and were mere puppets."

The petition then alleged that on March 31, 1926, C. L. Brown caused a stock certificate of plaintiff to be issued for 116 shares of

stock of the par value of $100 a share to himself without paying for it and afterwards caused dividends to be paid him on this stock; that on March 31, 1926, C. L. Brown instructed the accountants of the company to cause an entry to be made on the books of the company to charge him with interest on this amount, and this was done; that on or about September 13, 1935, C. L. Brown delivered a written acknowledgment of the indebtedness, then in the sum of $21,727.20. Judgment was asked on the first cause of action in the above amount.

The second cause of action was a small bill for merchandise bought by Brown and not paid for.

The answer was a general denial. A cross petition was also filed asking judgment for rentals claimed to be due from the company to Brown. The reply was a general denial.

At the trial there was no question raised except as to whether the right of action was barred by the statute of limitations. The matter of the second cause of action was not contested and a setoff was allowed on the cross petition. There is no appeal from this part of the judgment.

It will be noted that C. L. Brown was the president of the board of directors of the corporation from the time when the cause of action arose, when the corporation was organized, until the time of his death, about nine years later.

The question of law is whether under all these facts and circumstances the statute of limitations had run in favor of the president of the corporation upon his indebtedness to that corporation. The trial court held that the statute had not run or rather that it had been tolled. In this connection the paragraph of the petition heretofore quoted, wherein it was alleged that C. L. Brown dominated this corporation from the time of its organization to the day of his death, should be noted.

At the outset it should be noted that the plaintiff argues that the general finding of the trial court in favor of plaintiff amounts to a finding that the allegation quoted above was true. Ordinarily this argument would be good. On account of the contention of defendant that her demurrer to the evidence of plaintiff should have been sustained we shall examine the record with the view of ascertaining whether there was any substantial evidence to sustain this finding or to warrant the court in overruling the demurrer.

G. S. 1935, 17-605, provides as follows:

"The board of directors or trustees of any corporation may require the subscribers to the capital stock of the corporation to pay the amount by them respectively subscribed, in such manner and in such installments as may be required by the bylaws."

This section makes it the duty of the board of directors to collect money owed on a subscription for capital stock. G. S. 1935, 17-608, provides, in part, as follows:

"The directors . . . shall have the general management of the affairs of the corporation, and may dispose of the residue of the capital stock at any time remaining unsubscribed, in such manner as the bylaws may prescribe."

It is the theory of the defendant that the above statutes vest the general power to manage the affairs of a corporation and the specific power to collect a stock subscription in the board of directors, and that on this account it was the duty of the board to make a demand on Brown to pay for this stock, and that since no such demand was alleged or proved and it is neither alleged nor proved that Brown did any specific act to prevent the board from doing its duty, then defendant is entitled to the benefit of the statute.

There can be no doubt that it became the duty of the directors within a reasonable time after Brown purchased this stock to make demand on him for payment of his indebtedness to the corporation and upon his failure to pay to take the appropriate action in court.

The sole allegation in the petition to meet this situation is the paragraph about domination that has already been quoted in this opinion. It will be noted that this allegation is but little more than a statement that Brown dominated the affairs of the corporation. For the sake of this opinion, however, we shall place a broad construction on this statement and read it as though it alleged that Brown dominated the affairs of the corporation, and thereby prevented the board of directors from doing its duty and taking the proper legal steps to enforce the collection of this debt. Our examination of the record will be directed toward a search for evidence bearing on this point.

In the first place it is undisputed that Brown bought 116 shares at a par value of $100 a share. From 1923 to 1926 there seems to have been approximately 248 shares outstanding. Of these Brown owned 58 shares, R. W. Beach 90 shares and United Securities Company 58. From 1927 to 1932 there were 593 shares outstanding. Of these Beach held approximately 144, Brown 178 and either the United Securities Company or the United Telephone and Electric Company approximately 189. From 1933 to 1937 there were 750

shares outstanding. Beach held 144 shares, Brown 178 and United Telephone and Electric Company 348. The balance of the outstanding stock was apparently held by people who were not on the board. During all these years Brown was president, and he and Beach were on the board most of the time. A man named L. O. Verckler was also on the board.

M. C. Beamer testified that he had been the secretary of the company from 1926 to the time when the company went into reorganization. He identified a resolution of the board on January 26, 1926, authorizing the officers to sell at par the remaining capital stock in the amount of $50,100. Presumably it was part of this stock Brown bought that brought about this action. This witness testified that during the years 1926 to 1929 he was secretary of the United Securities Company and during the years from 1930 to 1934 he was secretary of the United Telephone and Electric Company; that during the years from 1926 to 1934, two or three weeks before the annual meeting of the stockholders, he would supply Brown with a list of the directors of the companies, and some time prior to the annual meetings Brown would indicate who the nominees for directors for the ensuing year were to be; that there were never any other nominees. This witness also testified that during the years from 1926 to 1935 he kept the monthly pay roll of the Beach Oil Company; that Brown told him what salary each employee and officer was to receive; that the same procedure was followed as to who should be directors and officers of the United Securities Company and the United Telephone and Electric Company. This witness also testified that he was a stockholder of the Beach Oil Company, but not a director, and that Brown had never asked him to vote for anyone as director.

The auditor of the company testified that Brown had hired him and fixed his salary. He identified the original ledger sheet of March 31, 1926, showing Brown was charged with $11,600. He testified that Brown was charged with this stock at Brown's direction and dividends were paid him on it up to April 1, 1932.

The foregoing was about all the evidence on behalf of the plaintiff. The defendant demurred to it. This demurrer was overruled. The defendant did not offer any evidence to dispute what was offered by the plaintiff. The only matter dealt with by defendant in putting in her evidence was her cross petition. There is no dispute here about that. The motion for a new trial was on the ground

of erroneous rulings of the trial court, more particularly the over-ruling of the defendant's demurrer to the plaintiff's evidence.

We have examined this record carefully and have set it out here in detail with the idea of discovering, if possible, if there was any substantial evidence to sustain the allegation heretofore quoted. We are forced to the conclusion that there is no such evidence even though every inference is indulged in favor of the plaintiff. We have been unable to find a single instance where Brown interfered with the manner in which the board of directors managed this company or prevented the board from doing its duty under G. S. 1935, 17-605 and 17-608.

Plaintiff asks us to infer that the board did as Brown desired because the members of the board were all officers of the company and would have lost their jobs if they had not done as Brown directed. This is an inference the trial court was not entitled to draw and one which this court will not draw. In the first place there is no evidence in this record as to the salary of these officers and directors or any surrounding circumstances with reference to them. In the absence of some evidence we will not presume that the members of the board of directors were so venal as to allow such a consideration to sway their action and cause them not to do their duty under the above statutes.

Plaintiff asks us to infer that because of the testimony of Mr. Beamer that Brown instructed him as to who should be on the board of the United Telephone & Electric Company and the United Securities Company and these companies owned large blocks of stock in the Beach Oil Company, that Brown dominated those two companies and through them the latter company. This inference we cannot draw in the absence of some evidence as to the organization of the two companies and the manner in which they were conducted.

In this connection it should be noted that Mr. Beamer was a stockholder but not a director. He could have brought an action at any time as a minority stockholder to cause this board of directors to do its duty. (See *Jordan v. Austin Securities Co.*, 142 Kan. 631, 51 P. 2d 38.)

As a matter of fact, while the trial court found generally for the plaintiff, as heretofore recited, the court did not put the decision upon the ground with which we have dealt so far, but rather upon the ground that Brown owed some duty with reference to bringing

this action against himself on account of the fact that he was president of the corporation, as well as being a member of the board. The court, on the hearing of the motion for a new trial, said:

"The Court: Here is a situation where it was the duty of Mr. Brown, his obligation, to pay this indebtedness, and he was the president of the company, whose duty it was to enforce that payment. That is the situation, gentlemen. He was in the situation where it was both his duty to pay and his duty to enforce payment.

"Mr. Rugh: Under the Kansas statutes, isn't it the duty of the board of directors, as such, to exercise a duty in their capacity as a board, not as individuals?

"The Court: Yes; but he was the president of the company."

We have searched the authorities carefully and have found none which hold there is a special duty imposed upon the president of a company in matters of this sort other than is imposed upon the board of directors. Indeed, we have seen that the statutes impose this duty upon the board of directors in clear and unmistakable language.

Having reached this point, we shall consider the question of whether the statute of limitations runs in favor of a member of the board of directors of a corporation on a debt owed the corporation. On this question, as stated, the authorities differ.

We have demonstrated that the statutes of the state place the duty of prosecuting claims such as we have here on the board of directors. The rule is further laid down in Spellman's Corporate Directors (1931), 394, as follows:

"The board of directors has the power to institute, prosecute, and defend suits brought by or against the corporation. The wisdom and expediency of bringing suit, or refusing to sue, is a matter for the determination of the board; and, unless fraud on the part of its members is proved, its decision will not be interfered with and no one else may sue in the corporate name."

See, also, *Barton v. Oil Co.*, 112 Kan. 436, 211 Pac. 608. There is no evidence in this record that the board of directors delegated any powers to Brown with reference to matters with which we are dealing.

Where the courts have held that the statute of limitations had not run in favor of a member of the board of directors of a corporation on a debt owed the corporation it has been on the theory that the relation between the directors and other officers of a corporation and the corporation or the stockholders generally is that of trustee and *cestui que trust* to such an extent that the statute does not run against a suit in equity against them to compel them to

account or pay damages for misappropriation of assets or mismanagement. (See 3 Fletcher, Cyclopedia Corporations, § 1301.) There it is said with reference to the above rule:

"This view, however, is contrary to the weight of authority. Even if the relation between a corporation and its officers is that of trustee and *cestui que trust*, the trust is not an 'express' trust as to which only limitations do not run; and in most jurisdictions it is held that the statute of limitations applies both to actions at law and suits in equity to compel officers to account for assets misappropriated by them, or to hold them liable for losses caused by their wrongful or unauthorized acts, or by other negligence."

In *Wallace v. Lincoln Savings Bank,* 89 Tenn. 630, the court said:

"Directors are not express trustees. The language of Special Judge Ingersol in *Shea v. Mabry,* 1 Lea. 319, that 'directors are trustees,' etc., is rhetorically sound, but technically inexact. It is a statement often found in opinions, but is true only to a limited extent. They are mandatories; they are agents; they are trustees in the sense that every agent is a trustee for his principal, and bound to exercise diligence and good faith; they do not hold the legal title, and more often than otherwise are not the officers of the corporation having possession of the corporate property; they are equally interested with those they represent; they more nearly represent the managing partners in a business firm than a technical trustee. At most they are implied trustees in whose favor the statutes of limitations do run." (p. 649.)

This opinion is cited in 14a C. J., section 1866, p. 98, as authority for the rule that a director of a corporation is not a trustee in a technical sense. See, also, *M'Clean v. Bradley,* 282 Fed. 1011. There the court said:

"Directors are not trustees, in such a sense that the statute of limitations or the doctrine of laches will not run in their favor." (Headnote, ¶ 15.)

See, also, 3 Fletcher, Cyclopedia Corporations, *supra,* where it is said:

"Directors are not trustees of an express trust with respect to the property, or funds of the corporation, but of an implied or resulting trust created by operation of law, and hence the statute of limitations and laches may be invoked in their defense when sued for a breach of trust." (§ 1301, note 87.)

See, also, *Cooper v. Hill,* 94 Fed. 582; *Winston v. Gordon,* 115 Va. 899, 80 S. E. 756; also, *Magale v. Fomby,* 132 Ark. 289, 201 S. W. 278.

There are authorities which hold that the statute does not run in favor of a member of the board of directors of a corporation on a debt owed the corporation. It has already been noted here that the theory of these holdings is that the director is a trustee. One such case is that of *Ryan et al. v. L. A. & N. W. Rly. Co. et al.,* 21 Kan.

365. In that case a director was held not to be entitled to the benefit of the statutes, but the decision turned upon the fact that the directors who were held liable had entered into a fraudulent contract to the detriment of the company. As we have demonstrated, there is no question of fraud in this case.

In 2 Thompson on Corporations (3d ed.), section 1433, page 986, the rule is stated as follows:

"But a better class of cases it seems regard the directors as trustees, and that no lapse of time is a bar to a direct or express trust, as between the trustee and the *cestui que trust,* and that the statute of limitations does not run against the claim of a corporation in actions against directors for breaches of trust. The cases generally proceed on the theory that directors are trustees of an express or direct trust, and that in all such cases the statute of limitations is no bar."

This is as strong a statement of the rule contended for on behalf of plaintiff as we could find. It states, however, that the action spoken of is for a breach of trust. The case given to support the above rule is *Ellis et al. v. Ward et al.,* 137 Ill. 509, 25 N. E. 530. In that case an action was brought by a receiver of a corporation against the finance committee of the board of directors and a former president of it, on account of a fraudulent contract whereby the board of directors paid money of the corporation to the president wrongfully. The court held that the statutes did not run in favor of the board of directors under such circumstances. *Greenfield Savings Bank v. Abercrombie,* 211 Mass. 252, is often cited as an authority for the proposition that the statute of limitations does not run in favor of a director of a corporation on a debt owed the corporation. An examination of this opinion, however, discloses that the action was against the members of the investment committee of the board of directors of a savings bank to recover losses incurred by the bank on account of loans made in violation of law. *Williams v. McKay,* 40 N. J. Eq. 189, 53 Am. Rep. 775, is the same sort of case and turns upon a like question. See, also, *National Bank of Commerce v. Wade,* 84 Fed. 10; also, *Schilling v. Parman et al.,* 35 F. 2d 780.

We have examined the authorities furnished by plaintiff and many others on this question somewhat at length. There are occasionally statements in textbooks to the effect that the statute of limitations does not run in such an action as we have here because of the trust relationship the director of a corporation bears to the corporation. The distinction usually drawn is that the relationship is that of a direct trust rather than an implied trust. When the cases are ex-

amined, however, it appears that in each case where the court held that the statute did not run the action was against the entire board or a committee of the board to which certain definite authorities and duties had been delegated and the action was based on fraud, violation of law, active mismanagement or some other act of bad faith, never on mere failure to act, and the statute never was held not to apply to a case where the duty to act was on an entire board and the action was brought against one member of the board only. We have heretofore demonstrated that there is neither fraud, violation of law, active mismanagement or other bad faith in this record. There is, therefore, no sound basis for the conclusion that defendant was not entitled to the defense of the statute of limitations in this case.

The judgment of the trial court is reversed with directions to enter judgment for defendant.

DAWSON, C. J., dissents.

HOCH, J. (dissenting): I must dissent from the decision in this case. In my opinion the record discloses sufficient facts to justify the holding of the trial court that the statute of limitations had been tolled and that recovery could be had upon Brown's debt to the company. The action was by the company against Brown's personal estate. The original debt was $11,600, for 116 shares of stock issued in 1926. No payments of principal or interest had been made, and the court found that there was due on the account $20,135.67. The essential question was whether Brown had occupied such a position with the company and had exercised such a control and domination of the board of directors as to hold him responsible for failure to enforce payment of the debt. If he did exercise such control and domination there is support for the trial court's view that the statute did not run during the period in question. (13 Am. Jur. 971; *Greenleaf v. Profile Cotton Mills,* 235 Ala. 530, 180 So. 582; 3 Fletcher's Cyclopedia Corporations, 301; *Ryan v. Leavenworth, A. & N. W. Ry. Co.,* 21 Kan. 365; *Federal Reserve Life Ins. Co. v. Gregory,* 132 Kan. 129, 294 Pac. 859; *Adam v. Morgan,* 142 Kan. 865, 52 P. 2d 643.) It also may be said that the situation is analogous to one where a party represents both sides of a claim and it is generally held that the statute does not run.

What did the testimony disclose as to Brown's domination? From the date the company was organized and during the whole period of

years in question he held and exercised a substantial majority stock control of the company. During the entire period he was president of the board of directors. The company secretary testified that every year, sometime before the annual meeting of the stockholders, Brown would hand him a list of those who were to be elected as officers and directors of the company and that such persons were always elected. He testified that it was Brown who fixed the salaries of the officers and employees. The auditor testified that it was Brown who hired him and fixed his salary. The secretary testified that Brown paid nothing for the stock issued to him and directed that he simply enter a charge for it on the books. Although he made no payment and never paid any interest on the debt, he drew his eight percent dividends regularly from March 1, 1926, to April 1, 1932. None of this testimony was disputed. The defendant offered no testimony whatever against this particular cause of action. In the face of the situation thus revealed, can there be any reasonable doubt that it was Brown and not the board of directors who was running the company and that Brown controlled and dominated the board? Was not the trial court right when it concluded that Brown had held such a trust relationship, and exercised such a control as to make him responsible for protecting the interests of the company? Surely no board of directors, except one which was wholly dominated by Brown himself, would have permitted him to take the company's stock, make no payment for it, pay no interest, but continue to receive his dividends regularly upon the stock. Brown was a debtor to the company on a debt created by his own act, he had full control, which he exercised, and was in position to avoid payment, which he did. To bar recovery on the debt, under such circumstances, is to use the statute to protect a wrongdoer in his own wrongdoing. I do not think the law and the decisions prevent escape from that result in this case.