**NATIONAL SAFE CORPORATION,**
**Plaintiff,**

v.

**TEXIDOR SECURITY EQUIPMENT,**
**INC., Defendant.**

**Civ. No. 79–2863CC.**

United States District Court,
D. Puerto Rico.

April 6, 1984.

Roberto López-García, Colorado, Martinez, Odell, Calabria & Sierra, Hato Rey, P.R., for plaintiff.

James A. Toro, Old San Juan, P.R., for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This action for declaratory judgment and injunctive relief was filed under the diversity grant of jurisdiction on December 10, 1979 by National Safe Corporation (National), the principal or supplier in a distributorship agreement with defendant Texidor Security Equipment, Inc. (Texidor). Plaintiff seeks a declaration that it had "just cause," as defined by Law 75 of June 24, 1964, *P.R.Laws Ann.*, Tit. 10 Sec. 278 *et seq.*, to terminate the contractual relationship or that defendant was not a "dealer" within the meaning of the statute. In the alternative, it seeks a declaration that Law 75 is unconstitutional. Texidor counterclaimed alleging that plaintiff's acts constituted a violation of Law 75. Extensive discovery

has been conducted for over three years. No dispositive pretrial motions were filed. After the final pretrial conference, the trial was set for March 23 and 24, 1983 and rescheduled for May 24 and 25, 1983 on defendant's request. Plaintiff then requested continuance because its expert witness would not be in Puerto Rico during May. Trial was reset initially for August 10, 1983 and later changed to November 8, 1983 due to conflict with criminal trials that had priority on our calendar. Plaintiff again sought continuance because a witness had to attend a board of directors' meeting during the week of November 7 to 11. This request and a motion to reconsider were both denied. Shortly thereafter, the parties filed their pretrial memoranda and plaintiff informed that it would eliminate that witness. On the eve of trial plaintiff filed a motion for summary judgment requesting dismissal of the counterclaim on the ground that Texidor was not the real party in interest. Its basic contention was that Texidor had assigned its dealer rights to National Enterprises, Inc. (Enterprises) practically at the very beginning of its relationship with plaintiff. Trial dates were set aside. However, an order was issued for plaintiff to show cause why its complaint against Texidor should not be dismissed for the same reasons urged by it in support of summary dismissal of the counterclaim; to wit, that Enterprises, not Texidor, was the dealer of its products. Plaintiff replied that it had filed the declaratory action against Texidor and not Enterprises because it was Texidor that threatened to sue it. Its argument on this awkward position was that the complaint also seeks a declaration that Texidor is not a distributor nor entitled to Law 75 protection. It blames Texidor for the confusion urging that its president Gabriel Texidor, Sr., was the one who brought this up during his May 1981 deposition[1] and that Texidor had always known of the existence of Enterprises. Texidor contends that Na-

tional is estopped from raising the real party in interest defense argument as grounds for dismissal of its counterclaim since at all times during their commercial relationship it dealt with Texidor as its distributor.[2] Should the court find that Enterprises is the real party, Texidor requests that Enterprises be joined pursuant to the "relation back" provisions of Rule 15(c), Fed.R.Civ.Proc., as if the counterclaim had been filed originally by it. National, in turn, has implied that Texidor's corporate shuffle may be for illegitimate purposes and that it should not benefit from this situation.

National's response to our show cause order leaves many questions unanswered. Its explanation on why it directed its complaint solely at Texidor and not at Enterprises or, for that matter, against both of them, makes no sense. The complaint itself states the reasons for terminating the relationship with Texidor. These are based on Texidor's poor sales performance, not on any threat of legal action expressed in the letter sent by Texidor's attorney *after* National had informed of its decision to end the contract. A reading of the entire complaint shows that the post-termination letter incident is not an event isolated from the rest of the allegations, most of which painstakingly assert how Texidor failed to meet National's expectations and why it acted correctly in terminating its dealership with Texidor. The complaint does not even hint that Texidor was an unrelated third party that fitted itself in Enterprises' shoes and threatened them with a Law 75 claim. Even assuming that National did not learn about Enterprises until Gabriel Texidor's deposition in May 1981, something which is contrary to the evidence on record, after such date there was no attempt by National to amend its complaint in order to seek declaratory relief against the one it now claims was its real dealer in Puerto Rico. National's allegations in support of declaratory and injunctive relief have nothing to

---

**1.** Reference is to Texidor deposition of May 1981 on assignment of rights to Enterprises.

**2.** We make no pronouncement on the nature or precise characteristics of this distributorship since this appears to be one of the main issues in the case.

do with its eleventh hour arguments. However, the weakness of National's excuse for bringing this action against Texidor only is apparent from reading the first sentence of the attorney's "threatening" letter: "We represent Texidor Security Equipment, Inc. and their affiliate National Enterprises, Inc. for many years your exclusive distributor for Puerto Rico."

The shakiness of National's position is also apparent in its characterization of the allegations challenging the applicability of Law 75 to Texidor as a justification for bringing its action solely against Texidor. National's allegations on the inapplicability of Law 75 to Texidor have nothing to do with its last minute argument that dealership rights lie elsewhere. Until the day before trial its contention on the inapplicability of Law 75 to Texidor was based on lack of exclusivity of the dealership and not on the absence of any commercial relationship with Texidor on account of the assignment of its distributorship rights. · Placing the blame on Texidor because it knew of the existence of Enterprises serves only to muddy the waters even more. The existence of Enterprises and its relationship to Texidor and to National itself were known to National long before the filing of its declaratory action. Its argument that, since Texidor knew of the existence of Enterprises, Enterprises should have sued cuts both ways for National could just as well have filed its action against Enterprises or against both Enterprises and Texidor. Likewise, its contention that Texidor, Sr.'s brief deposition testimony on the Texidor-Enterprises relationship shows that distributorship rights were completely transferred ignores the bulk of the evidence on record and plaintiff's own conduct and admissions throughout its business dealings with defendant.

The basic premise underlying plaintiff's argument is that Enterprises is the only party with capacity to sue it under Law 75. Since the Law 75 counterclaim was not filed by Enterprises, plaintiff seeks its dismissal as procedurally defective. Its lack of standing argument looks to Rule 17(a), Federal Rules of Civil Procedure, which requires that "[e]very action ... be prosecuted in the name of the real party in interest." A "real party in interest" has been defined as one who possesses the substantive right being asserted, *United States v. 936.71 Acres of Land, State of Fla.*, 418 F.2d 551, 556 (5th Cir.1969). Aside from the general reluctance of courts to apply wooden interpretations to the rules of procedure when substantive rights are at stake, *see e.g.: United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1137, 16 L.Ed.2d 218 (1965), Rule 17 and others contain provisions that avoid defeating substantive rights. They were designed precisely to leave behind the old practice of placing too heavy an emphasis on rigid applications that foreclose legitimate claims filed against a technically incorrect defendant from reaching the court. *See generally:* 6 Wright and Miller, *Federal Practice and Procedure*, Sec. 1541. Rule 17(a) provides that:

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Thus, a mere "ratification" by the alleged real party not included in the action to the effect that the party suing is capable of enforcing the right and that it will be bound by the results of that action is deemed sufficient to cure any objections of this nature. *See: Audio-Visual Marketing Corp. v. Omni Corp.*, 545 F.2d 715, 719 (10th Cir.1976); *Motta v. Resource Shipping and Enterprises Co.*, 499 F.Supp. 1365, 1369 (S.D.N.Y.1980); *Clarkson Co. Ltd. v. Rockwell Intern. Corp.*, 441 F.Supp. 792, 797 (N.D.Cal.1977). The last sentence of Rule 17 clearly suggests that by merely joining the real party claimed any objections based on the running of limitations periods would be fore-

closed. In *Prevor-Mayorsohn Caribbean v. Puerto Rico Marine,* 620 F.2d 1, 3 at n. 2 (1st Cir.1980) our Circuit said:

The 'main thrust' of this passage [the last sentence of Rule 17(a) ] 'is to allow a correction in parties *after* the statute of limitations has run, despite the valid objection that the original action was not brought by the real party in interest.' 3A Moore's Federal Practice, Par. 17.-15–1 at 17–182. (Emphasis added.) Although Prevor thus may have been able to continue the case simply by having its parent company ratify its act in commencing suit, *or by substituting or joining the parent,* Prevor's failure to do so cannot properly provide grounds for dismissal where it was, in its own right, a proper plaintiff.

*Id.* (Emphasis added.) Other courts, however, favor a balancing approach. The joinder or substitution provision of the rule is not applied unless some injustice will result and the failure to have instituted the action correctly is due to some excusable mistake. *See: Crowder v. Gordons Transports, Inc.,* 387 F.2d 413, 418 (8th Cir.1967). Sometimes courts have looked to the relation back criteria of Rule 15(c), Federal Rules of Civil Procedure, as guidance in applying the last sentence of Rule 17(a), Federal Rules of Civil Procedure. *See e.g.: Metropolitan Paving Co. v. International U. of Op. Eng.,* 439 F.2d 300, 306 (10th Cir.1971) *cert. denied,* 404 U.S. 829, 92 S.Ct. 68, 30 L.Ed.2d 58. Rule 15(c), Federal Rules of Civil Procedure, permits an amendment changing a party to relate back to the date of the original filing, overcoming any statute of limitations problems, if the claim made by the new party arises out of the occurrence or transaction set forth in the original pleading and if,

[W]ithin the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the

merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.[3]

The principal element required is notice to the parties opposing the amendment, an element which is measured in terms of the prejudice that would result in allowing or refusing the amendment. *See: Yorden v. Flaste,* 374 F.Supp. 516, 518–21 (D.Del. 1974) *and cases there cited.* In *Williams v. United States,* 405 F.2d 234 (5th Cir. 1968), an action for personal injuries was filed against the United States by a minor through his mother as next friend. At an advanced stage of the proceedings, the mother requested leave to amend the complaint to appear as a plaintiff in her own right. The government opposed arguing that her action was time barred and the district court denied a request to amend. The Court of Appeals reversed finding that the United States had sufficient notice of the claim and of the existence of the immediate relative to have arrived at the reasonable inference that such an action could have been possible. *Id.* at 239. In the context of a real party in interest joinder the analysis of hardship must be oriented to the purposes of the rule which are to protect "a defendant from facing a subsequent similar action brought by one not a party to the present proceeding and to ensure that any action taken to judgment will have its proper effect as res judicata." *Prevor-Mayorsohn Caribbean v. Puerto Rico Marine,* 620 F.2d 1, 4 (1st Cir.1980).

Although the parties have not addressed the substantive law which would determine Texidor's capacity to bring the counterclaim, it appears that Puerto Rico's Civil Code permits the assignment of rights, credits or actions, *see: P.R.Laws Ann.,* Tit. 31 Sec. 3941 and *Robles v. Superior Court,* 85 PRR 640, 647–49 (1962); *Ojeda v. Fernández,* 32 PRR 688, 692 (1924). The Code provides that contracts are valid only

---

**3.** Although drafted in terms of new defendants, it has been suggested that the rule can be applied by analogy to amendments changing plaintiffs. See: Federal Rules of Civil Procedure Advisory Committee's Note to Rule 15(c).

between the parties who execute them, *see: P.R.Laws Ann.*, Tit. 31 Sec. 3374, and this has been interpreted to require that judicial actions to enforce contracts be prosecuted by contracting parties, *Suárez v. Hernández*, 56 PRR 262, 268 (1940), or by third parties for whose benefit the contract is made. *See: id.* at 269 and *National City Bank v. Guarch*, 50 PRR 847, 852 (1937). The type of transfer that plaintiff claims took place between Texidor and Enterprises is either a partial or a complete assignment of its rights in the distributorship agreement. If complete, this would be tantamount to a novation of the contract between Texidor and National by one between National and Enterprises. *See: P.R. Laws Ann.*, Tit. 31 Secs. 3151, 3241. Although the Civil Code permits the establishment of an enforceable contract merely by the parties' consent, when the contract itself is questioned, the will of the parties— the crucial element of any contract—is ascertained by examining the acts performed during and after the contractual obligation.

In this case plaintiff contends that there is no dispute that Texidor transferred *all* of its rights to Enterprises in the manner required by Puerto Rico law thus extinguishing Texidor's interest and claims in the dealership contract and precluding it from seeking its enforcement. This is based on testimony given by Gabriel Texidor, Sr., president of Texidor, during his deposition to the effect that a few months after the dealership had begun he informed National that Texidor would operate as Enterprises and that all its sales be processed in Enterprises' name. This testimony marks one instance in a record which, viewed in its entirety, points to a conclusion quite different from that of plaintiff. This excerpt of the deposition was subsequently clarified by Texidor, Sr. in an affidavit where he states that Texidor "has at no time ... relinquished, waived or assigned its rights as [plaintiff's] dealer in Puerto Rico" and that "the only function of [Enterprises] was that of appearing as agent of [Texidor] in the processing of purchase orders for [plaintiff]." He declared under oath that all merchandise bought from National was always shipped to Texidor and that efforts to obtain the sales billed in Enterprises' name were made by Texidor. Affiant also states that Texidor would deliver, install and provide maintenance to the products sold and would hold itself to the general public as the representative of National products in Puerto Rico. In terms of accounting, he stated that all commissions derived from sales of plaintiff's products, including those made in Enterprises' name, were paid directly to Texidor and were reflected in Texidor's account books. The record supports this sworn statement. In particular, it is supported by the depositions of plaintiff's own officers-directors, present and former, who continuously refer to Texidor as the party to deal with in Puerto Rico. As indicated in these depositions, National's sales and collection records were not separated to reflect dealings made with each corporation. They were considered as one entity throughout the relationship. Important communications regarding the distributorship, such as providing or canceling a line of credit, were made to Texidor, not to Enterprises. In various communications sent by National to consumers of its products in Puerto Rico it refers them to Texidor as its authorized dealer in Puerto Rico. Even the financial analysis made by Texidor's expert to canvass the special damages claimed under the Law 75 counterclaim, a study made before the real party issue was raised, did not separate the entities in terms of sales to one or the other but treated all loss of sales, special losses and damages as falling on one corporation. However, by far the most revealing document in support of Texidor's position is National's own verified complaint. There it refers to Texidor as *the* entity to which it sold its products during the years the relationship lasted, the entity which it considered was not providing an effective sales performance; the party to whom it communicated its intention of starting its own distributing operations in Puerto Rico, the entity with which it meets to find an "amicable solution" to

the controversy arising from the decision to operate directly in Puerto Rico and it is against Texidor that plaintiff seeks declaratory relief. The declaration sought primarily seeks a determination that National had just cause to terminate the dealership with *Texidor* or that it did not conduct any act detrimental to its relationship with *Texidor*. It is impossible to conclude from such a record that there is no controversy on whether Texidor transferred the dealership and all its rights of enforcement to Enterprises. If anything, a serious argument can be made in support of the opposite conclusion, given the law in Puerto Rico regarding contract interpretation, the possibility of partial assignments of contractual rights and third-party beneficiary stipulations, not to mention the flexible real party in interest provisions of Rule 17(a). Yet, assuming that National could confront potential multiple liability if the counterclaim were prosecuted solely by Texidor, the rules provide a remedy. The fact that Enterprises, if joined or substituted, would sue for precisely the same Law 75 claim on the same set of facts known to National by its own admission, is enough to comply with Rule 15(c) requirements under the balancing approach. However, after considering the circumstances of this we believe neither joinder nor substitution are necessary. Rather, ratification by Enterprises is the most suitable means of dealing with the present situation.

Accordingly, Texidor is ORDERED within ten (10) days after notice to file a sworn statement by a person duly authorized to represent and act on behalf of Enterprises Inc. stating that it was not assigned Texidor's rights as plaintiff's dealer, that Enterprises' only function was as Texidor's agent in processing purchase orders, that Enterprises possesses no substantive right to sue plaintiff, that all rights stemming from the relationship with plaintiff are held by Texidor and that Enterprises will be bound by the results of this action. In this manner Texidor's compliance with Rule 17

will be established without any doubt and no possible injury can befall plaintiff if the counterclaim is prosecuted by Texidor alone.

Finally, the Court rules that plaintiff's inexcusable delay, short of obstruction of the proceedings, in bringing this matter to its attention is in itself sufficient to deny the dismissal motion. *See: Hefley v. Jones,* 687 F.2d 1383, 1388 (10th Cir. 1982); *McLouth Steel Corp. v. Mesta Machine Co.,* 116 F.Supp. 689, 691 (D.C.Pa. 1953) *aff'd. on other grounds* 214 F.2d 608 (3rd Cir.) *cert. denied* 348 U.S. 873, 75 S.Ct. 109, 99 L.Ed. 687. Plaintiff and its attorney are expressly admonished that any future conduct of this sort shall be severely sanctioned.[4]

SO ORDERED.

---

**4.** Plaintiff's attorney is reminded of the provisions of 28 U.S.C. Sec. 1927 and the responsibility now imposed upon signing papers and motions pursuant to Rule 11, Federal Rules of Civil Procedure, as amended, which have been in effect since August 1, 1983.