**RESOLUTION TRUST CORPORATION,**
in its Corporate Capacity, Plaintiff,

v.

**James E. SCALETTY, Paul LaForge, E.W. Miller, Dr. Charles F. Henderson, Charles J. Scaletty, Tony Dechario, Montie Taylor, James B. Mitchell, and Myrtle Hucke, Defendants.**

No. 92–1101–K.

United States District Court,
D. Kansas.

Sept. 30, 1992.

---

Lee H. Woodard of Woodard, Blaylock, Hernandez, Pilgree & Roth, Wichita, KS, for plaintiff.

James E. Scaletty and Charles J. Scaletty, of Smith, Brown & Jones, Kansas City, MO, for defendants Scaletty.

Donald W. Giffin, of Spencer, Fane, Britt & Browne, Kansas City, MO, and Nancy M. Landis, of Spencer, Fane, Britt & Browne, Corporate Woods, Overland Park, KS, for defendant LaForge.

Bruce B. Waugh and Carol A. Zuschek, of Gilliland & Hayes, Kansas City, MO, for defendant Taylor.

Robert R. Raymond and R. Lawrence Ward, of Shughart, Thomson & Kilroy, Kansas City, MO, and J. Kent Miller, of Miller & McCarren, Denver, CO, for defendant Miller.

Kenneth L. Weltz, of Curfman, Harris, Rose & Weltz, Wichita, KS, for defendant Mitchell.

Richard W. Loffswald, Jr., Girard, KS, for defendant Dechario.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, Chief Judge.

There are currently three sets of motions relating to substantive matters before the court. First, several of the defendants have moved for summary judgment based on the perceived incapacity of the Resolution Trust Corporation (RTC) in its corporate role. Second, defendant LaForge has moved for summary judgment on the basis of the statute of limitations. Finally, the RTC has moved to strike a variety of defenses which have been raised by the defendants. On September 21, 1992, the court heard oral argument relating to these motions. For the reasons stated herein, the court grants the motion to strike and denies the remaining motions.

### 1. *Real Party in Interest*

Defendants LaForge, Taylor, Mitchell, and Miller have moved for summary judgment on the basis that the plaintiff is not the correct real party in interest. The plaintiff in the present action is the RTC acting in its corporate capacity. However, the claims against the former directors and officers of Peoples Savings are assets currently held by the RTC acting in its capacity as receiver. The RTC, acting as receiver, has not transferred these claims to the RTC acting in its corporate capacity. The plaintiff (RTC/corporate) has conceded that the present claims should have been brought in the name of RTC/receiver.

According to the plaintiff, the complaint was brought in its corporate capacity due to the inadvertent mistake of counsel. The RTC attorney having responsibility for this action, Neysa Day, was seriously injured in an automobile case. In her absence, other RTC personnel prepared the case as an action by RTC in its corporate capacity. When Ms. Day returned to work, she failed to notice the error due to her extensive backlog of cases.

The defendants are essentially correct in their contention that the present action has not been brought in the name of the correct party in interest. The RTC has conceded as much. But the defendants err in suggesting that the remedy for this failure is to dismiss the action.

Fed.R.Civ.P. 17(a) governs procedure matters relating to real party in interest considerations. The rule provides in part:

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

In the present action, the court shall require the submission of a written statement of ratification of the complaint by the RTC in its capacity as receiver. Under provisions of Rule 17(a), this will remove any claim that the present action was not brought in the name of the real party in interest, and therefore remove any possibility that the defendants might be subjected to further litigation by the real party in interest. As one authority has observed:

The final sentence in Rule 17(a) is designed to avoid forfeiture and injustice when an understandable mistake has

been made in selecting the party in whose name the action should be brought. Thus, a correction in parties is permitted even after the statute of limitations governing the action has run. This provision reflects the general policy of the draftsmen of the federal rules that the choice of a party at the pleading stage ought not have to be made at the risk of a final dismissal of the action should it later appear that there had been an error.

6A Wright & Miller, *Federal Practice & Procedure* § 1555, at 412–14.

This approach has been approved by the Tenth Circuit in *Audio–Visual Marketing v. Omni Corp.*, 545 F.2d 715, 719 (10th Cir.1976). In that case, the defendant raised at trial the objection that the plaintiff had not prosecuted the action in the name of the real party in interest. The defendant alleged that the real party was not the plaintiff but the bank to which the plaintiff had assigned certain accounts receivable. The district court denied the objection.

On appeal, the Tenth Circuit noted that the defendant's real party in interest objection failed on a number of grounds. Included in these grounds was the action of the bank, after the objection had been made, in reassigning the accounts to the plaintiff, and further, the testimony of the president of the bank that it had no interest in the accounts. By this testimony, the Tenth Circuit stated the bank had "otherwise ratified the bringing of the action by the plaintiff." 545 F.2d at 719. Thus, the Tenth Circuit found, the defendant's objection "was immediately cured by reassignment and ratification. Such is in line with Rule 17(a) which states that an action should not be dismissed on the ground that it is not prosecuted in the name of the real party in interest until the plaintiff has been given a reasonable time to remedy this situation." *Id.*

Kansas district courts have reached similar conclusions. In *Shinkle v. Union City Body*, 94 F.R.D. 631, 634 (D.Kan.1982), Judge O'Connor expressly agreed "with those courts that permit a plaintiff to change the capacity in which an action is brought when there is no change in the parties before the court and all parties are on notice of the facts out of which the claim arose." Judge Crow reached the same conclusion in *Tip Top·Credit Union v. Cumis Ins. Soc'y*, Case No. 84–1794–C, 1988 WL 383484 (D.Kan. Jan. 29, 1988). In that case the action had been brought by a credit union. The real party in interest in the case, however, was found to be the receiver of the credit union. The court found that the situation could be corrected through ratification of the action by the receiver.

Rule 17(a) limits dismissal for failure to prosecute in the name of the real party in interest until after the plaintiff has been provided reasonable time to rectify the situation. *Audio–Visual Marketing Corp. v. Omni Corp.*, 545 F.2d 715, 719 (10th Cir.1976). A ratification by the real party not included in the action to the effect that the party suing is capable of enforcing the right and that it will be bound by the results of the action is deemed sufficient to cure any objections. *Nat. Safe Corp. v. Texidor Sec. Equipment Inc.*, 101 F.R.D. 467, 469 (D.P.R.1984) (and cases cited therein.) Whether a written ratification is appropriate rests within the court's sound discretion guided by the purpose to protect the defendant from subsequent litigation and to resolve completely the claims involved. *Motta v. Resource Shipping & Enterprises Co.*, 499 F.Supp. 1365, 1371 (S.D.N.Y.1980). In the case at bar, the court believes a formal ratification by [the receiver] in its receiver capacity or its joinder in this suit would resolve any issue as to the real party in issue.

Slip op., at 7–8.

There is substantial authority indicating that it would be error to dismiss an action without allowing the plaintiff the opportunity to correct the situation by joinder, substitution or ratification. Thus, in *Crowder v. Gordons Transports*, 387 F.2d 413 (8th Cir.1967), a wife mistakenly brought suit as administratrix of her deceased husband's estate. The defendant moved to

dismiss the action, alleging that under applicable state law the action should have been brought in the widow's own name. The district court, after denying the widow's motion to amend, dismissed the action. The Eighth Circuit held that the dismissal was error, since the defendant had been fully advised of the nature of the claims that had been raised in the case, and would have suffered no prejudice if the action had been amended. *See also Sun Refining & Marketing v. Goldstein Oil*, 801 F.2d 343 (8th Cir.1986) (holding that the trial court erred in refusing to accept ratification of the commencement of the action by the real party in interest, where ratification would cause no prejudice to the defendants and failure to accept ratification would result in forfeiture of the claim.)

Defendant LaForge has attempted to limit the application of Rule 17(a) in the present case by citing the statement contained in 6A Wright & Miller, *Federal Practice and Procedure* § 1555, at 415, that despite the literal wording of the rule, relief should not be granted in the absence of excusable mistake, and should be allowed only where it is necessary to avoid injustice. The cases cited by this authority in support of this observation, however, merely establish that Rule 17(a) relief should not be allowed where it would reflect an abuse of process, such as the use of John Doe or fictitious names in the hope that the real party subsequently may be discovered. *See O'Donnell v. Kusper*, 602 F.Supp. 619, 624 (N.D.Ill.1985); *Chapman v. King*, 572 S.W.2d 925, 929 (Tenn.1978).

There is absolutely nothing in the record before the court that would suggest that the plaintiff's mistake in characterizing itself as RTC/corporate rather than RTC/receiver was anything other than an honest error. Moreover, the confusion exhibited in the present case (between the RTC in its corporate capacity and the same entity in its receivership capacity) is certainly more natural and understandable, and hence more excusable, than the erroneous designation of parties in cases such as *Tip Top Credit Union, Shinkle, Crowder,* and *Sun Refining.*

Furthermore, it is clear that allowing ratification would cause no unfair prejudice to the defendants. Throughout the present action the defendants have known the nature of the claims that have been raised against them. The defendants at no time have been under any misapprehension as to the alleged facts and circumstances which form the basis for potential liability. Permitting the RTC in its capacity as receiver to correct an honest error and ratify the present action will not unfairly prejudice the defendants. Unfairness or injustice would arise only if the present action were to be dismissed due to an inadvertent semantic error.

### 2. *Statute of Limitations*

Defendant LaForge has filed a separate motion for summary judgment alleging that the present action is time-barred under Kansas law. Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505,

2514, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The following uncontroverted facts are established in the record before the court.

Paul LaForge was a director of Peoples Savings until February 11, 1985, when he resigned from the institution. In letters to the president of Peoples Savings, James Scaletty, LaForge referred to an October presentation by a federal bank examiner which detailed "a number of transactions which I think were imprudently entered into by management." LaForge cited the examiner's comments on "the substantial investment which has been made in development and speculative loans located outside of Kansas." LaForge contended that Peoples Savings management had failed to keep him informed of the institution's investments. LaForge wrote that, had he been informed of these proposed investments, he would have attempted to dissuade management from undertaking them.

According to LaForge, the bank examination report which prompted his resignation was a report prepared jointly by the Federal Home Loan Bank Board and the Kansas Savings and Loan Department (known as the Fishback Report). This report identified several deficiencies in marketability studies and appraisal reports used by the board of Peoples Savings.

The Fishback Report also caused Kansas Savings and Loan Association Commissioner Marvin Steinert to write a February 25, 1985 letter to Scaletty. In this letter, Steinert noted that the Fishback Report had indicated "losses totaling approximately $1.2 million [from] loans on troubled or particularly troubled development and speculative construction projects." Steinert ordered the board of Peoples Savings to "cease all commercial real estate lending activities." Steinert stated that the Fishback Report had shown "numerous deficiencies which indicate an absence of safe and sound underwriting procedures and raises serious questions regarding management's expertise in this type of lending."

On February 28, 1989, Peoples Savings & Loan Association in Parsons, Kansas was placed in a conservatorship by the Federal Home Loan Bank Board. Peoples Savings subsequently was placed in receivership for purposes of liquidation, and the Resolution Trust Corporation was appointed to act as receiver. The RTC has assumed certain assets of Peoples Savings, including claims against its former directors and officers for alleged acts of malfeasance.

On February 27, 1992, the RTC instituted this civil action against LaForge and other officers of Peoples Savings, alleging negligence, breach of fiduciary duty, and gross negligence. The RTC complaint seeks damages of several million dollars.

▪ LaForge argues that the present prosecution is time-barred under the two-year statute of limitations for actions involving negligence or tortious breach of fiduciary duty. K.S.A. 60–513(a). The parties generally agree on the application of the underlying limitations period. They disagree, however, as to whether the statute of limitations should be equitably tolled under the adverse domination doctrine.

The principle of adverse domination has been applied in a series of Kansas district court decisions. *RTC v. Interstate Federal Corp.*, 762 F.Supp. 905, 909–10 (D.Kan. 1991); *FDIC v. Ashley*, 754 F.Supp. 179 (D.Kan.1990); *FDIC v. Robertson*, No. 87–2623–S, 1989 WL 94833 (D.Kan.1989); *FDIC v. Hudson*, 673 F.Supp. 1039, 1042

(D.Kan.1987). The doctrine has also been adopted as a matter of federal common law of the Tenth Circuit. *Farmers & Merchants Nat'l Bank v. Bryan,* 902 F.2d 1520, 1523 (10th Cir.1990). *See also California Union Ins. v. American Diversified Sav. Bank,* 948 F.2d 556 (9th Cir.1991); *Bornstein v. Poulos,* 793 F.2d 444 (1st Cir.1986); *Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d 873 (9th Cir.), *cert. denied,* 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984); *RTC v. Gardner,* 798 F.Supp. 790 (D.D.C.1992); *FDIC v. Howse,* 736 F.Supp. 1437 (S.D.Tex.1990); *FDIC v. Berry,* 659 F.Supp. 1475 (E.D.Tenn.1987); *FDIC v. Dempster,* 637 F.Supp. 362 (E.D.Tenn.1986); *FDIC v. Buttram,* 590 F.Supp. 251 (N.D.Ala.1984); *FDIC v. Bird,* 516 F.Supp. 647 (D.P.R.1981).

The principle underlying the doctrine of adverse domination was discussed by Judge Saffels in *FDIC v. Hudson:*

> [A]s long as a bank is dominated by the same wrongdoers against whom a cause of action exists, the statute of limitations is tolled. The rationale behind this theory is that the wrongdoers cannot be expected to bring an action against themselves. Only when a new entity takes control of the bank, be it a receiver or a new board of directors, can suit against the wrongdoers be brought as a practical matter.

673 F.Supp. at 1042.

LaForge argues that the doctrine of adverse domination is merely a federal common law principle, and that application of the doctrine in Kansas is inconsistent with existing state law relating to equitable estoppel. LaForge challenges the application of the adverse domination doctrine, citing the decision of the Kansas Supreme Court in *Guilfoyle v. Brown,* 149 Kan. 615, 88 P.2d 1082 (1939). In that case, a corporation had brought suit against the estate of Brown, a former president and director of the corporation, seeking the price of stock purchased by the president in 1926. At the time of Brown's death in 1935, the debt remained unpaid. When the corporation brought suit, his estate set up the defense of the statute of limitations. On appeal, the supreme court reversed the decision of the trial court and held that the action was time-barred.

The interpretation which defendant LaForge seeks to draw from the *Guilfoyle* decision is misplaced. The court did not hold that equitable tolling of the statute of limitations ceased because of Brown's demise (and his resulting departure from the company's board of directors). Rather, it held that tolling never occurred, that the statute of limitations began to run in 1926 when Brown first bought the stock. Equitable tolling was not applicable in the first instance because there was no evidence of domination of the other members of the board by Brown at any point during his life. The court stressed that the action was not against the entire board of directors, but an action against a single member of the board. Moreover, the court found that the corporation had failed to provide "any substantial evidence" of control. 149 Kan., at 619, 88 P.2d 1082. Indeed, the only evidence of a possible conflict cited by the plaintiff was the fact that the other members of the board of directors had also been officers who drew salaries from the corporation. The *Guilfoyle* court held that this fact, standing alone, did not support the conclusion that the corporation's directors "were so venal as to allow such a consideration to sway their action and cause them not to do their duty under the above statutes." *Id.*

In contrast, the present case involves an action premised upon the wrongdoing or active mismanagement by the entire board of directors of Peoples Savings. The plaintiff RTC alleges that all of the board, including LaForge, engaged in the acts of negligent mismanagement and breach of duty to the corporation. Under these circumstances, in which the entire board, including LaForge, is alleged to have breached the trust of the corporation, all are subject to equitable tolling of the statute of limitations.

■ The argument of LaForge that the principle of adverse domination is contrary to the law of Kansas is incorrect. No inconsistency between the law of the State

of Kansas and the principle of equitable estoppel is reflected in the principle of adverse domination. Rather, the doctrine has been found to be wholly consistent with accepted principles of Kansas law. *FDIC v. Hudson*, 673 F.Supp. at 1043 n. 2 (citing *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 716 P.2d 575 (1986)); *Clark Jewelers v. Satterthwaite*, 8 Kan.App.2d 569, 662 P.2d 1301 (1983). In *Hudson*, the court concluded that the principle of adverse domination was not only consistent with Kansas law, it also reflected a "post-Depression approach to corporate responsibility and the realities of corporate control by directors." 673 F.Supp. at 1043.

LaForge also argues that even with the application of equitable tolling pursuant to the doctrine of adverse domination, the statute of limitations has run nonetheless. He argues that notwithstanding the application of the adverse domination doctrine, the statute of limitations period should be considered to have begun running on the date he left the board of directors of Peoples Savings in 1985, and not the subsequent date the institution was placed in receivership.

In connection with this argument, LaForge asserts that his fiduciary duty to the corporation was terminated by his resignation, and that in any event his only fiduciary duty to disclose potential wrongdoing while he was a director "ran to the Kansas Savings and Loan Commissioner and not to other shareholders or depositors." (Def's Reply, at 2.) LaForge then undertakes an extensive discussion of the powers of the state commissioner, through a special deputy, to regulate or enforce the interests of Peoples Savings. It is clear, however, that in determining whether to equitably toll the statute of limitations pursuant to the principle of adverse domination, the focus must be on the defendant's fulfillment of his fiduciary duties, i.e., whether the defendant undertook to protect the interests of the corporation and its shareholders. The failure to act of a regulatory agency, which may have received some limited and incomplete information as to the potential wrongdoing, is not in itself a bar to equitable tolling where the directors who have participated in the wrongdoing fail to fulfill their fiduciary duties to the corporation.

LaForge also contends that he was unable to take any action other than resignation, since the 1984 Fishback Report prevented him from taking action to protect the interests of Peoples Savings. This contention is not supported by the facts presented to the court. The Peoples Savings board was directed by the Report of Joint Examination not to "disclose or make this document or any portion of it public in any manner." But this prohibition applies only to the release of the text of the report itself. There is nothing in the report which relieved the board, including LaForge, from acting to correct potential wrongdoing of which they had independent knowledge. There is nothing that prohibited LaForge, if indeed he had no knowledge of the faulty loans at Peoples Savings, from investigating the situation independently. There is nothing that prohibited LaForge from revealing to shareholders information acquired independently from the joint report, remaining on the board to challenge the other directors at board meetings over the issue, or filing a derivative action on behalf of Peoples Savings against the other directors.

More broadly, LaForge suggests that the potential breach of fiduciary duty reflected in these failures to protect the interests of Peoples Savings was nonetheless cured by his resignation. His argument is essentially that, by learning of the situation at Peoples Savings, and walking away from it, he satisfied any obligation he may have had to Peoples Savings and its investors. This argument, that after his departure from the board he owed no fiduciary duty to Peoples Savings, is premised on the decision of the Kansas Supreme Court in *Parsons Mobile Products v. Remmert*, 216 Kan. 256, 531 P.2d 428 (1975). In that case, the former director of a corporation had gone into competition with the corporation after he had resigned from the board. The corporation brought suit against a former director alleging the violation of an asserted post-termination duty not to com-

pete. The court stated that absent an explicit contractual agreement not to compete, a former director was free to engage in competition with a corporation after he is removed or resigns from the corporation. 216 Kan. at 260, 531 P.2d 428.

But while a director may be free to engage in competition with the corporation, it is not clear that the simple act of resignation frees the director from all obligations to the corporation. Thus, it has been observed that although a director may engage in competition with the corporation after his resignation, he nonetheless retains a fiduciary obligation to the corporation as to information he may have acquired prior to his resignation. *See* 3 W. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 860, at 275–76 (1986). Resignation, this last authority has stated, "does not sever accountability for a deal or transaction having its inception prior to resignation." *Id.,* at 276. Indeed, even in *Parsons Mobile Products,* the court indicated that some post-termination duty of loyalty remains which prohibits the former director from "mak[ing] use of confidential information peculiar to the corporation's business and acquired therefrom." 216 Kan. at 260, 531 P.2d 428.

■ If LaForge had learned of the potential wrongdoing at Peoples Savings after he left the institution, his fiduciary duty argument might carry some persuasive effect. However, having learned of these facts while a director, LaForge clearly had a duty to the shareholders of the corporation. Under Kansas law, the directors of a corporation owe a very strict fiduciary duty both to the corporation and its shareholders. *Mid–West Underground Storage, Inc. v. Porter,* 717 F.2d 493, 500 (10th Cir.1983); *Delano v. Kitch,* 663 F.2d 990, 996–97 (10th Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2012, 72 L.Ed.2d 468 (1982); *Miller v. Foulston, Siefkin, Powers & Eberhardt,* 246 Kan. 450, 467, 790 P.2d 404 (1990); *Oberhelman v. Barnes Inv. Corp.,* 236 Kan. 335, 338, 690 P.2d 1343 (1984). Indeed, Kansas law imposes "a higher standard or stricter fiduciary duty for directors and officers of corpora-

tions than some jurisdictions." *Miller,* 246 Kan. at 467, 790 P.2d 404. Thus, the directors must act in the best interest of the corporation and its shareholders. *Sampson v. Hunt,* 233 Kan. 572, 665 P.2d 743 (1983). This fiduciary duty to the corporation and its shareholders includes a duty of full disclosure of corporate matters. *Schraft v. Leis,* 236 Kan. 28, 36, 686 P.2d 865 (1984).

LaForge could have fulfilled this obligation. As noted earlier, he could have initiated an action against the other directors on behalf of Peoples Savings. Instead, he simply resigned and did nothing. The law of Kansas is clear that in such a situation the fiduciary obligation of the director is to act in the interest of the corporation. LaForge, on the other hand, appears to have allowed his behavior to be controlled solely by the dictates of self-interest.

The principle of adverse domination has received consistent acceptance in recent years. The issue before the court therefore is whether there is any equitable reason not to apply the principle in the case before it. The principle of adverse domination is ultimately based on the principle of silence: that the defendant directors responsible for damage to the corporation have remained silent, rather than protecting the interest of the corporation. The doctrine of adverse domination recognizes the unfairness inherent in barring a subsequent action on behalf of the corporation where the directors have not revealed the information relating to the alleged wrongdoing to the shareholders. Here, while LaForge departed from Peoples Savings, he did not act in its interest, but in his own. Just as did the directors who remained on the board, he also took no action on behalf of the corporation; he also remained silent.

In determining whether to apply the principle of adverse domination, the focus must be upon whether LaForge, faced with information indicating serious problems at Peoples Savings, satisfied his obligation to the institution and its investors by simply stepping away. Thus, whether LaForge indeed had a "continuing duty" after his

resignation is ultimately beside the point. The facts before the court establish that LaForge breached a duty to protect the interests of the shareholders, that he did nothing to correct the situation, and that this breach was not "cured" by his resignation from the board. As indicated in the uncontradicted facts submitted to the court, the board of Peoples Savings was composed of eight persons prior to LaForge's resignation. After the resignation, the only person appointed to the board was Beulah Neff, a longtime employee of the board of Peoples Savings. Until the institution was placed in receivership in 1989, no persons independent of the existing board were made directors at People Savings.

Under the prevailing standards for summary judgment, the court must infer in favor of the RTC all facts alleged in the complaint which have not been established by LaForge beyond a reasonable doubt. Accordingly, the court must assume, for purposes of resolving the present motion, that defendant LaForge was indeed negligent and breached his duty to the corporation. LaForge undertook no effort to correct the situation or protect the interests of the shareholders. Under the circumstances of the present case, there are no equities which would compel the creation of an exception to the rule of adverse domination.

Other authorities which have addressed similar situations have reached the same result. Generally, even after an individual director resigns, the statute is tolled while a corporate plaintiff "continues under the domination of the wrongdoers." *See generally* 3A *Fletcher Cyclopedia of the Law of Private Corporations* § 1306.2, at 679. The issue arose in this district in *Hudson*. In that case, the defendant had left the bank's board of directors in 1983, while the remaining members of the original board remained in power until the bank was closed in 1984. The court observed generally that under the doctrine of adverse domination the statute of limitations was tolled, and that this tolling ended "[o]nly when a new entity takes control of the bank, be it a receiver or a new board of

directors." *Hudson*, 673 F.Supp. at 1042. However, Judge Saffels concluded that it was unnecessary to determine whether, under the adverse domination doctrine, the limitations period began to run in 1983 or 1984 since the action had been timely brought in either case. 673 F.Supp. at 1043.

However, Judge Saffels subsequently had occasion to resolve this issue explicitly in *FDIC v. Oakes*, No. 89–2261–S, 1989 WL 151954 (D.Kan. Nov. 3, 1989). In that case, the court found that under the adverse domination theory, the statute of limitations did not begun to run until the bank was closed and the board of directors removed from power in August, 1984. This was true even as to other director defendants who had left the board prior to that time. The court stated that the statue of limitations was tolled as to all of the directors

> because defendants W.E. Oakes, Jacqueline Oakes and R.B. Kuersteffen as part of the control group of bank directors served as directors and officers until August 1986. Although defendants Jeffrey and McCartney resigned as directors and officers prior to the bank closing in August 1986, their resignation dates did not commence the running of the limitation period because Bank President W.E. Oakes and his "control group" remained in control until August 1986. *See FSLIC v. Williams*, 599 F.Supp. 1184, 1193 (D.Md.1984) (endorsing the view that an addition of a disinterested majority of nonculpable directors is required to cease the tolling of the statute of limitations).

1989 WL 151954, at 2–3. *See also RTC v. Gallagher*, 800 F.Supp. 595 (N.D.Ill.1992) (the limitations period "begins to run again when the wrongdoers lose control of the entity"); *RTC v. Interstate Federal Corp.*, 762 F.Supp. at 909 (tolling occurs "when a controlling majority of the board of directors are culpable and, because of their numerical domination, prevent the corporation from pursuing its rights"); *FDIC v. Howse*, 736 F.Supp. at 1442.

In *FSLIC v. Williams*, 599 F.Supp. 1184 (D.Md.1984), the court held that the principles underlying the doctrine of adverse domination precluded the avoidance of the doctrine by the mere fact of resignation. Instead, the court held that despite the resignation, equitable tolling should continue until the board is composed of a disinterested majority of nonculpable directors. The court explained that this result recognized the practicalities of the corporate direction. Even after an individual resignation, the court stated, the remaining majority of culpable directors retain control of the corporation and may prevent the undertaking of any action against them by dominating "the non-culpable directors and control[ling] the most likely sources of information and funding necessary to pursue the rights of the association. As a result, it may be extremely difficult, if not impossible, for the corporation to discover and pursue its rights while the wrongdoers retain control." 599 F.Supp. at 1193–94 n. 12.

The United States District Court for the District of Columbia reached the similar conclusion in *RTC v. Gardner*, 798 F.Supp. 790 (D.D.C.1992). There, the court rejected the contention of defendant, an attorney for the failed Lincoln Savings institutions, that the statute of limitations barred the RTC's action. The defendant argued that since he had been neither an officer nor director of Lincoln Savings, the principle of adverse domination could not be applied. The court disagreed, stating that the defendant's arguments were an unpersuasive "attempt to unduly restrict the reach of the adverse domination doctrine. Contrary to the defendant's contention, the doctrine has been applied in cases involving defendants who were neither officers nor directors of the corporation." *Gardner*, at 795 (citing cases). The court held that the adverse domination doctrine applied since a majority of the directors of the failed thrifts were involved in associated wrongdoing.

Finally, the recent decision of the Tenth Circuit in *Farmers & Merchants Nat'l Bank* supports this conclusion. Although the court did not address the present issue directly, the court's analysis of the doctrine of adverse domination is relevant. In that case, the two defendants contended that the presence of an equal number of outside directors negated as a matter of law the principle of adverse domination. The Tenth Circuit observed that the plaintiff must show that the charged directors were in exclusive control of the corporation, control which would have thwarted any attempt by an informed director to cause the corporation to bring suit. 902 F.2d at 1523 (citing *International Railways v. United Fruit*, 373 F.2d 408, 414 (2d Cir.), *cert. denied*, 387 U.S. 921, 87 S.Ct. 2031, 18 L.Ed.2d 975 (1967)). Adverse domination may also be established, the court noted, by proof "that an informed director, though capable of suing, would not do so." *Id.*

■ In determining whether to apply equitable tolling, the focus necessarily must be on whether the interests of the corporation and its shareholders have been protected by the removal of control by the group of directors and officers who are alleged to have participated in the wrongs committed against the corporation. In the present case, the resignation of defendant LaForge did not result in the appointment of a new and independent majority of the board of directors. Nor did LaForge participate in any attempt to protect the interests of the corporation and its shareholders, other than to resign. LaForge was an informed director; he had the ability to bring suit; he would not do so. His resignation, standing alone, does not prevent the application of equitable tolling.

### 3. *Motion to Strike*

■ The various defendants have asserted a host of affirmative defenses in the answers, and the RTC has moved to strike a number of these as legally insufficient. A motion to strike is generally disfavored. However, the decision to grant a motion to strike is within the discretion of the court. If the defense is clearly insufficient as a matter of law, it should be stricken. *See* 5 Wright & Miller, *Federal Practice & Procedure* § 1382.

Reviewing the various defenses which have been raised, the court finds that these defenses are legally insufficient and must be stricken. The overwhelming weight of the case law establishes that the various cited defenses are not legally sufficient defenses in actions brought by the RTC.

## A. Preemption.

■■■ Several defendants argue that the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1441a(b)(4), preempts state law permitting simple negligence actions against the officers of financial institutions. These defendants argue, accordingly, that the RTC's claim may be established only if it demonstrates the existence of gross negligence.

The RTC's motion to strike will be granted as to this defense. The position advanced by defendants was recently rejected by the Tenth Circuit in *FDIC v. Canfield*, 957 F.2d 786 (10th Cir.1992), where the court held that FIRREA did not preempt state actions for negligence. Although defendants have noted in their briefs that the *Canfield* defendants have time remaining in which to file a petition for certiorari with the Supreme Court, this ruling is nonetheless directly controlling here. Accordingly, the defense will be stricken.

## B. Contributory negligence and similar defenses.

■■■ The RTC contends that defenses based on contributory negligence as to actions by federal regulatory agencies are not legitimate defenses in the present action. The case law, which heavily supports this position, is premised on two separate considerations. First, several courts have found that such defenses are inconsistent with the discretionary function exception to the waiver of sovereign immunity created by the Federal Tort Claims Act. *FDIC v. Manatt*, 723 F.Supp. 99, 104 (E.D.Ark. 1989); *FSLIC v. Williams*, 599 F.Supp. at 1197–1198. *See United States v. Gaubert*, 499 U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). Other courts have held that such defenses may not be raised since the federal regulatory agency owes no duty to the defendant director or officer. *FDIC v. Crosby*, 774 F.Supp. 584, 586 (W.D.Wash. 1991); *FDIC v. Baker*, 739 F.Supp. 1401, 1404–07 (C.D.Cal.1990); *Manatt*, 723 F.Supp. at 104; *FSLIC v. Burdette*, 696 F.Supp. 1183, 1189 (E.D.Tenn.1988); *FDIC v. Blackburn*, 109 F.R.D. 66, 73 (E.D.Tenn. 1985).

Kansas courts which have addressed the issue have found that the defense of contributory negligence is not a valid defense and should be stricken. *FDIC v. Niver*, 685 F.Supp. 766 (D.Kan.1987) (Judge Saffels, striking affirmative defenses of contributory and comparative negligence, estoppel, and fraud); *FDIC v. Oakes*, 1989 WL 151954 (Judge Saffels, striking comparative and contributory negligence, breach of duty, waiver, laches, and statute of limitations); *FDIC v. Ashley*, 749 F.Supp. 1065, 1068 (D.Kan.1990) (Judge Van Bebber, striking affirmative defense of comparative negligence).

## C. Comparative negligence.

■■■ The defense of comparative negligence is also raised by many of the defendants. It, too, will be stricken. The Kansas Supreme Court addressed a comparable situation in *FSLIC v. Huff*, 237 Kan. 873, 704 P.2d 372 (1985), in which it held that the affirmative defense of comparative negligence was not available as a defense in an FSLIC action against the directors and officers of a savings and loan association. The court based this conclusion, in part, on its finding that the case involved only economic loss, a claim which it determined fell outside the scope of the comparative negligence statute.

In 1987, the Kansas legislature amended K.S.A. 60–258a so that comparative negligence would be available in actions for economic loss. However, the alleged losses of Peoples Savings in the present action occurred prior to the date of this amendment, which has been determined to have no retroactive application. *Wichita Fed. Sav. & Loan Ass'n v. Black*, 245 Kan. 523, 781 P.2d 707 (1989).

In any event, in addition to its economic loss finding, the *Huff* court also identified two further rationales for its decision. First, the court noted that the defense of comparative negligence was not available in any action in which contributory negligence could not have been raised as a defense prior to the enactment of comparative negligence. An action by or on behalf of the shareholders of a corporation, the court found, was not such a case. Since a corporation can act only through its directors and officers in the first place, it would be inappropriate to allow the defendant officer to assert comparative negligence on the part of the corporation. Second, the court stated that public policy prevented use of comparative negligence as a defense, since Kansas law imposed a higher duty on the officers of savings and loans than on officers of other corporations. Even apart from the subsequent amendment of the comparative negligence statute, these considerations remain applicable and support the conclusion that the defense should not be permitted in the present action.

#### D. Failure to mitigate damages.

 All of the defendants who have filed answers have asserted the defense of a failure to mitigate damages. In response to the RTC's motion to strike, the defendants have responded by citing the decision of Judge Van Bebber in *FDIC v. Ashley*, 749 F.Supp. at 1068–69. In *Ashley*, Judge Van Bebber ruled that comparative negligence was not available as an affirmative defense to the defendants. However, he also found that the defense of a failure to mitigate damages was available as a defense.

This was so, according to the court, for two reasons. First, although the FDIC may not have owed a duty to the directors of the financial institution, it did owe an obligation, as the receiver of the institution, to mitigate damages on behalf of the institution's owners and creditors. Second, even if the FDIC, as receiver, "owed no duty to anyone," there was still an obligation to mitigate damages since "the legal requirement" to do so "is not actually a

'duty,' but a limitation on the amount of damages recoverable by the plaintiff." 749 F.Supp. 1065, 1069 (citing *Home Life Ins. v. Clay*, 13 Kan.App.2d 435, 773 P.2d 666, 674 (1989). The court finds that in this respect the *Ashley* decision is incorrect, and that the defense of failure to mitigate damages will be stricken. First, it should be noted that the decision goes against the weight of authority. *FDIC v. Crosby*, 774 F.Supp. 584, 586 (W.D.Wash.1991). *See also FDIC v. Stuart*, 761 F.Supp. 31 (W.D.La.1991). Nor is *Ashley* the only Kansas district court decision on point. In *FDIC v. Oakes*, 1989 WL 151954, Judge Saffels struck a defense that the plaintiff had failed to exercise a "duty to use ordinary care in its loan collection activities," essentially a claim of failure to mitigate.

Second, the *Ashley* decision only attempts to address the arguments of no duty which had been advanced by the FDIC. The decision did not address the separate basis for the exclusion of such defenses, the principle of sovereign immunity. *See FDIC v. Stanley*, 770 F.Supp. 1281, 1309 (N.D.Ind.1991).

Third, and not discussed either in *Ashley* or by defendants, is the effect of 12 U.S.C. § 1821(d)(13)(D), which limits the subject matter jurisdiction of federal courts in FDIC actions. Under § 1821(d)(13)(D), the court may not entertain any claim with respect to the assets of an institution for which the FDIC serves as receiver, or any claim relating to the actions of the FDIC as receiver. In the recent case of *FSLIC v. McGinnis, Juban, Bevan, Mullins & Patterson, P.C.*, 808 F.Supp. 1263 (M.D.La. 1992), the court ruled that the statute is unambiguous, and served to bar the assertion of various defenses—including the defense of failure to mitigate damages. By these defenses, the court found, the

> defendants attempt to reduce the FDIC's recovery in this case because of the FDIC's alleged mismanagement of Sun Belt's [an insolvent savings and loan association] assets while acting in its role as receiver. Section 1821(d)(13)(D)(ii), in clear and uncharacteristically simple terms, bars defenses arising out of the

FDIC's post-receivership management of Sun Belt's assets.

Op., at 1280.

Finally, and most importantly, the affirmative defense of failure to mitigate allowed by the *Ashley* decision is contrary to public policy. In their responses to the RTC's motion to strike, various defendants (especially LaForge) wax philosophic about the public policy rationale for the decision in *Ashley*. This requires some degree of imagination, however, since the text of the *Ashley* opinion itself is utterly silent as to public policy considerations. Public policy played no role in the decision in that case. Instead, as indicated above, the court reached its decision based upon a simple duty analysis.

Contrary to the arguments of defendants, considerations of public policy compel the conclusion that the defense of failure to mitigate should not be allowed. This is because it represents an attempt to distract the fact finder's attention from the misdeeds of the directors and officers of the failed financial institution to the actions of the institution's receiver. Due to the magnitude of abusive practices in the savings and loan industry, the RTC and its predecessor regulatory agencies have acquired an immense collection of assets which are often of dubious value. In fulfilling its legislative mandate as receiver, the RTC is often required to sell off these assets at significant loss. This mandate reflects a congressional determination that the affected institutions should be removed from receivership as promptly as possible. The directors and officers of the failed institution should not be allowed to profit by this public policy decision by being allowed to assert a defense of failure to mitigate.

In *FDIC v. Baker*, the court observed FIRREA represented a far-reaching attempt to stem the crisis in the nation's savings industry. In achieving this "massive overhaul," the court stated, the FDIC and the RTC carry "no duty to any but the public" in determining how best to liquidate failed financial institutions. 739 F.Supp. at 1406. *See FDIC v. Lowe*, 809

F.Supp. 856 (D.Utah 1992) ("public policy militates against judicial second-guessing of FDIC's actions or requiring the public at large to bear the costs of FDIC dealing with the intricacies of disposing of the assets of a failed bank.")

These public policy concerns were also developed at length in *FSLIC v. Burdette*, 718 F.Supp. 649, 663–64 (E.D.Tenn.1989):

In cases of the failure of a savings institution, it is important to the public that the receiver rapidly and efficiently convert the assets of that institution to cash to repay the losses incurred by the insurance fund and the depositors for deposits not covered. Suits by the FSLIC as a receiver to recover assets, or to recover damages for wrongdoing, should not be encumbered by an examination in court of the correctness of any specific act of the FSLIC in its receivership. The rule that there is no duty owed to the institution or wrongdoers by the FSLIC/Receiver is simply a means of expressing the broad public policy that the banking laws creating the FSLIC and prescribing its duties are directed to the public good, and that every separate act of the FSLIC as a receiver in collecting assets is not open to second guessing in actions to recover damages from wrongdoing directors and officers. If there is no wrongdoing by the officer or director, there can be no liability, but if wrongdoing is established, the officer or director should not be allowed to set up as a defense a claim that would permit the detailed examination of the FSLIC's action as a receiver.

The court finds these considerations forceful. The question of liability in the present action must turn upon the deeds or misdeeds of the defendants. The actions of the governmental agencies charged with the duties of receiver of Peoples Savings are not relevant, and the defense of failure to mitigate is accordingly stricken.

### E. Laches, waiver, and estoppel.

Other courts have addressed similar issues, and found such defenses should be stricken. *See, e.g., FDIC v. Oakes* 1989

WL 151954, at 3 (striking defense of laches); *FDIC v. Niver*, 685 F.Supp. at 768–69 (striking defense of estoppel). None of the defendants in their responses have brought forth any reason why these defenses should not be stricken. Accordingly, these defenses will be stricken as to those defendants who have attempted to raise them.

### F. Causation by other federal agencies.

■ Consistent with general rules of law reflected in the great weight of authority, as indicated above, the defendants may not look to the conduct of RTC, the FSLIC, or other regulatory agencies. *FDIC v. Isham*, 782 F.Supp. 524, 532 (D.Colo.1992); *First Financial Sav. Bank v. American Bankers Ins.* 783 F.Supp. 963, 969 (E.D.N.C.1991). The same is true of the post-closing actions of federal agencies acting as receivers or conservators of the property. *FSLIC v. Shelton*, 789 F.Supp. 1367 (M.D.La.1992); *FDIC v. Eckert, Seamans, Cherin & Mellott*, 754 F.Supp. 22 (E.D.N.Y.1990); *FDIC v. Greenwood*, 719 F.Supp. 749 (C.D.Ill.1989); *Burdette*, 718 F.Supp. 649; *FDIC v. Carlson*, 698 F.Supp. 178 (D.Minn.1988). As the court noted in *FDIC v. Renda*, 692 F.Supp. 128, 133 (D.Kan.1988), the claim that the financial institution's losses were not caused by the defendants is not an affirmative defense, and should be stricken for purposes of simplicity. The defendants are still free to prove that the losses incurred by Peoples Savings were not caused by their actions. What they cannot do is attempt to shift the focus of the trial onto the actions of federal regulatory agencies.

### G. Violation of Executive Order 12778.

■ Executive Order 12778 is a directive requiring federal agencies involved in litigation to attempt to achieve compromise and settlement prior to filing suit. One of the defendants has raised the order as an affirmative defense, asserting that the RTC has violated the order by failing to comply with its terms.

This affirmative defense will be stricken. The cited order is a directive to federal agencies, but it carries no sanction for the failure to comply with its terms. To the contrary, the order itself expressly states that it shall not be construed to create a defense on the part of any party.

### H. Kansas rule against assignment of torts.

The answers of defendants LaForge and Taylor raise the defense that the claims against the directors of Peoples Savings reflect tort actions which may not be assigned to the RTC under federal law. The defense has been rejected as inconsistent with federal law. *FDIC v. Hudson*, 643 F.Supp. 496 (D.Kan.1986) (citing *FDIC v. Rectenwall*, 97 F.Supp. 273, 274 (N.D.Ind. 1951)); *FSLIC v. Fielding*, 309 F.Supp. 1146, 1151 (D.Nev.1969), *cert. denied*, 400 U.S. 1009, 91 S.Ct. 567, 27 L.Ed.2d 621 (1971).

### I. Miscellaneous defenses.

Finally, in addition to all of the above, the answers filed by the defendants include defenses premised on the statute of frauds, the parole evidence rule, and the Fifth Amendment. The RTC has moved to strike these defenses as well. None of the defendants, in their responses to the motion to strike, has come forward with any reason why these defenses are remotely applicable in the present case. The court has been unable to determine any basis upon which these defenses may rest, or why they should not be stricken from the present action.

IT IS ACCORDINGLY ORDERED this 30th day of September, 1992, that the motion to strike of plaintiff RTC (Dkt. No. 45) is hereby granted. The motion for summary judgment of defendant LaForge, asserting the defense of statute of limitations (Dkt. No. 42), is hereby denied. The remaining motions of defendants LaForge, Taylor, Miller and Mitchell for summary judgment (Dkt. Nos. 64, 69, 72, 75), asserting that the action has not been brought in the name of the real party in interest, are denied, unless the RTC, acting in its capacity as receiver, fails to file with the court within one month of the date of the present

order a written statement of ratification of the present court action.